## HERRICK vs. STOVER.

The *record* of a *private road* laid out by commissioners designating the course, distance and quantity of land taken, is sufficiently definite to shew that the road was intended to be *two rods* wide, and *parol* evidence that such would be the result from the *data* given is admissible.

Where a party obtains a right to a *private road* of the width of *two rods*, the owner of the land through which it passes must so build his fences as to leave full two rods in width in every part of the road ; he cannot build a *Virginia fence*, placing the centre on the exterior lines of the two rods with the angles projecting into the road.

A party will be deemed to have assented to such location of the fences, if apprised that the damages of the owner of the lands were assessed in reference to such location, or if he permits the fences to be thus built without objection.

Although a suit is manifestly *vexatious* and a plaintiff entitled to only *nominal damages*, a judgment of a subordinate tribunal, if *erroneous*, will be reversed.

ERROR from the Rensselaer common pleas. Herrick sued Stover in a justice's court for an encroachment upon a *private road*, obtained by him over the lands of the defendant, under the statute regulating highways. The encroachment consisted in the building of *worm* or *Virginia* rail fences, on each side of the road, so near to each other that in *eleven* places the width of the road was only 22 feet and $\frac{3}{11}$ of an inch on an average, varying' from about 20 to 23 feet, instead of *two rods*. The justice rendered judgment for the plaintiff for *six cents damages*, and $1,81 costs. The defendant appealed to the Rensselaer common pleas, where the cause was again tried. The plaintiff produced a *record* of the road, containing a particular description of the place of beginning, the courses and distances, stating its extent across the lands of the defendant to be 19 chains and 74 links, and its contents to be 3 roods and 38 perches of land. The road was laid out by commissioners on the oath of twelve freeholders declaring it to be proper. The *surveyor* employed by the commissioners testified that he ran but one line; that the road was calculated to be two rods wide, measuring from the line run by him as a centre, and that only by estimating the road to be two rods wide, could the quantity of land taken amount to 3 roods and 38 perches: this evidence was objected to by the defendant, but received by the court. The encroachment by means of the fences was proved as above stated; they are worm rail fences, the centres of which are placed on the exterior line of the two rods, angling alternately on the land of the defendant and on the road, having stakes at each angle. The road is on high ground, and subject to drifts in the winter season; it was laid out in *July*, 1824; in *September* following the defendant built the fences, and in the ensuing month of *October*, the plaintiff required the defendant to remove them. The damages of the plaintiff were appraised at $100, including $10, the costs of the proceedings, which sum was paid to the defendant, who elected to use the road in common with the plaintiff.

On the part of the defendant, it was proved by two of the commissioners who assessed the damages of the defendant by reason of the road, that they made their assessment on

ALBANY,
October, 1830.

Herrick
v.
Stover.

the assumption that rail fences were to be built, and that the centre of the fences was to be placed on the exterior of the two rods; that it was spoken of by the parties that rail fences were to be built, and that in the presence of the parties they made an estimate of the number of rails necessary for the building of the fences; and that on the assumption that the fences were to be placed otherwise than on the centre of the exterior lines of the two rods, they would have assessed the damages at a greater amount: this evidence was objected to, but received. The defendant further proved that the fences were built as nearly on the exterior line of the two rods as possible, and that one of the commissioners of highways who laid out the road *directed the fences to be built on the line;* this direction was given to a son of the defendant, when the other commissioners and the plaintiff were present, but whether the plaintiff heard the directions, the witness could not say: this testimony was also objected to, but received.

The court charged the jury that the width of the road was not designated by the *record,* and that they must decide whether it was intended to be *two rods wide* or not; if they should find it was to be of that width, there could be no doubt that the defendant had encroached upon it, and the plaintiff was entitled to their verdict for such damages as they should think proper to allow; but if they believed that the commissioners of highways declared and intended at the time of the laying out of the road that the fences should be placed as they had been placed, and that the plaintiff so understood it and assented to the assessment of damages according to such understanding, and that the fences had been placed according to such assent and understanding of the parties, then they should find for the defendant. The jury found a verdict for the defendant, on which judgment was entered. The plaintiff having had a bill of exceptions signed, sued out a writ of error.

*H. P. Hunt,* for plaintiff in error. The evidence of the surveyor was properly received; it did not contradict or vary the *record,* but was entirely consistent with it, and therefore admissible. 1 *Phil. Ev. ch.* 10, § 2. He was called to shew

how the quantity of land specified in the record was arrived at. All the testimony in the case, however, shews that the road was to be *two rods* wide. The evidence of the direction given by the commissioners of highways as to the placing of the fence, and of the principles on which the appraisers assessed the damages, was illegal, and ought not to have been received, because it was not shewn that the plaintiff was privy to those transactions. The court erred in submitting the question of the width of the road to the jury as a question of fact, when the record and the explanatory evidence was conclusive; and they also erred in directing the jury that they might infer a *license* to the defendant to build the fence in the manner in which it was built.

*J. Pierson*, for defendant in error. The court ought not to have permitted any evidence of the width of the road other than the *record;* the commissioners are required to make *records* of their proceedings in relation to roads, and such records are the only proper evidence. 2 *R. L.* 276. 9 *Johns. R.* 365. *Parol* evidence is inadmissible to supply, contradict or explain a record. 11 *Johns. R.* 201. 24 *id.* 1. 8 *id.* 189. *Roberts on Frauds*, 10.

The width of a *private road* is not specifically defined by statute; the only provision on the subject is, that it shall not be more than *three rods* wide. 2 *R. L.* 277. The evidence of the declarations of the commissioners was therefore proper; and the testimony of the appraisers was also correctly received, as it furnished evidence of the assent of the plaintiff to the building of the fences in the manner in which they were erected. If the plaintiff did so assent, or give licence previous to the appraisement of the damages, he could not subsequently revoke it; but if he had the power to do so, he did not revoke. The notice to remove the fences given in October was not obligatory upon the defendant; a notice to remove fences should state specially the extent of the encroachment. 9 *Johns. R.* 359.

The plaintiff's action is vexatious; when he recovered before the justice, he obtained judgment for but *six cents* damages, and if any error has occurred on the trial, it is sub-

mitted whether the judgment below ought to be reversed. Was this an application for a new trial, the court would not hesitate to refuse it. *3 Johns. R.* 528, 240. 2 *T. R.* 4. 1 *Burr.* 11. 2 *id.* 664.

*Hunt,* in reply. The plaintiff is entitled to his right of way; the road is on high land, and exposed in the winter season to obstructions from snows. He has therefore cause of complaint, that his road of 33 feet in width is reduced one third by the acts of the defendant, and is entitled to protection in the enjoyment of his rights, let his damages be what they may.

*By the Court,* MARCY, J. The evidence of the *surveyor* was objected to as inadmissible, but received by the court, and it is now contended, that if that decision was incorrect, the plaintiff wholly failed in shewing title to the premises, the foundation of his action failed, and any subsequent errors in favor of the defendant cannot avail him.

I think the *record* was sufficient evidence of the breadth of the road. It gave the distance through the defendant's land, the course and the quantity of land taken. It is a result of calculation, that a passage way one rod wide on each side of the course stated in the record, for the distance the road ran through the defendant's land, would require precisely the quantity of land taken for that purpose from the defendant. In legal intendment, the road will be considered as laid out, (the course specified in the record taken as the centre,) of such a width as the quantity of land will permit. Although the record did not shew on its face the width of the way, it furnished the means of arriving at that fact with certainty; one object, probably, of examining the surveyor, was to make the calculation, (or rather to shew the result of it,) for making which the record furnished the means; his testimony was not offered with the view of *altering* or *contradicting* the record; it was not to supply a defect in the record. His testimony was also required for the purpose of locating the premises. The record showing the distance, the course and the quantity of land, the law adjudges, where nothing

to the contrary is specified, the breadth in all parts to be equal, and the surveyor was examined to shew from these data what that breadth was. The plaintiff therefore established in a proper manner, that the road was to be two rods wide.

The fence built by the defendant on the sides of the road was what is usually called a *Virginia fence;* the angles projecting equally and alternately into the road, and on to the land of the defendant. Had the defendant a right to build such fence without the license of the plaintiff? I think he had not. The plaintiff had been assessed, and had paid for a passage-way two rods wide, and giving one less than that width, was not allowing him all he had acquired and might demand. It is not an answer to this action, to say that he was not interrupted in the use of the road by the fence. The placing of it ten or twelve feet on the land he had acquired for his road gave him a cause of action, unless he had yielded his assent expressly or impliedly to such location.

I think the charge of the court in relation to the width of the road exceptionable. So far as the *record* went, it was unimpeached and unimpeachable, and it shewed, according to the calculation of the surveyor, that a road two rods wide had been laid out. If it had been shewn that this calculation was incorrect, or if the *data* on which it was made could in any view have furnished a different result, there might have been a question of fact for the jury; but the testimony raised no doubt on this subject; and yet, by the charge of the court, the width of the road was left to the jury as a matter of fact. In this the court erred, and for this error we are obliged to reverse the judgment.

As a *venire de novo* must be awarded, it may be proper to say something upon the other point of the case. What was said at the time the road was laid out and the appraisement made, by strangers or by individual appraisers, the plaintiff not being present, was inadmissible testimony. The expectation of the appraisers as to the mode of locating the fence, unless these expectations were made known to the plaintiff

and received his explicit or tacit assent, should not have been given in evidence to influence the jury. Although the road was to be two rods wide in the clear, and the plaintiff could have insisted upon such a road, yet, if he gave his assent to have the defendant's damages assessed with reference to such fence as was built, with the centre on the exterior lines of the road; if he afterwards assented to the location as it was made; or if he saw the defendant constructing it as it is, and knowing that the angles encroached upon the road and was silent, he ought not, in my opinion, to sustain an action for damages. In either of those cases the law would regard him as having assented to the act which he now complains of as an injury.

It was suggested, on the part of the defendant, that as this was evidently a vexatious suit, and the damages which the plaintiff would be entitled to recover would be merely *nominal*, we ought not to interfere, even if there had been an error. The rule referred to by the counsel for the defendant has never, I believe, been applied to a case like this. The cases in *Burrows*, 11, 54, 664, were motions for new trials, where verdicts had been rendered against the weight of evidence, and the court refused to grant the applications, because the damages were trivial and the prosecutions appeared to be vexatious. In the case of *Edmonson* v. *Machell*, 2 *T. R.* 4, there was an alleged misdirection to the jury by the judge who tried the cause. The court refused to set aside the verdict or pass upon the questions of law, because they thought justice had been done between the parties. In actions of *assault and battery* and for *trespasses*, this court have refused new trials for the misdirection of the judge where there was little or no injury. In *Hyatt* v. *Wood*, 3 *Johns. R.* 239, the court refused the motion for a new trial, but they said if the action had been *quare clausum fregit*, in which the right to the freehold came in question, they should have decided otherwise. Lord *Kenyon* said, in *Wilson* v. *Rastall*, 4 *T. R.* 753, that he did not recollect a single case, where a mistake of the judge had crept in and swayed the opinion of the jury, in which the court had ever refused to grant a new trial. I apprehend the case before us differs from any to which the rule

mentioned in the above cases has been applied. It is much like the case which was considered in *Hyatt* v. *Wood*, an exception. The object of this suit is not merely to recover such damage as the plaintiff may have sustained, but it is also to determine the extent of his right to property acquired for a private way. There is also a difference, as I apprehend, in the application of this rule, whether applied to a motion for a new trial or a writ of error. It is said by *Ashurst*, justice, in *Edmonson* v. *Machell*, that "an application for a new trial is an application to the discretion of the court, who exercise that discretion in such a manner as will best answer the ends of justice." But where a record is brought into this court for revision, and error is found in it, is it a matter of discretion in us whether we will correct that error or not? I have always supposed that the party who has been affected by an error, be the extent of that injury ever so small, can require of us *ex debito justitiæ* to correct it.

Judgment reversed, and a *venire de novo* to Rensselaer common pleas.