Bronson, J.
Every person liable to be assessed for highway labor, may apply to the commissioners of highways of the town in which he resides to lay out a road. Whenever application is made to the commissioners for a 'private road, they are to summon twelve freeholders of the town to meet on a day certain, of which, notice must be given to the owner or occupant of the land through which it is proposed to lae out the road. The freeholders, when met and sworn, ary - to view the lands through which the road is applied for, and if they determine that the road is necessary, they are *142 to make and subscribe a certificate in writing to that effect, and the commissioners are required thereupon to lay out the road, and cause a record of it to be made in the town clerk’s" office. The damages of the owner of the land through which the road is laid, if not adjusted by agreement, are to be assessed by a jury of six freeholders of some other town, and are to be paid by the person applying for the road. u Every such private road, when so laid out, shall be for the use of such applicant, his heirs and assigns; but not to be converted to any other úse or purpose than that of a road. JVor shall the occupant or owner of the land through which such road shall be laid out, be permitted to use the same as a road, unless he shall have signified his intention of so making use of the same, to the jury or commissioners who ascertained the damages sustained by laying out such road, and before such damages were so ascertained.” (1 R. S. 513, § 54,77—79.) Th.e road is paid for and owned by the applicant. The public has no title to, nor interest in it. No citizen has a right to use the road as he does the public highway. He can only use it when he has business with the road owner, or some other lawful occasion for going to the land intended to be benefitted by the road. He can only justify an entry on the road, when he could justify an entry on the land on account of which the road was laid out. Even the owner of the land over which the road passes, unless he has given notice of such an intention before the damages are assessed, has no right to use the road for his own purposes; and if h.e does so, or if his fences encroach upon the road, the owner of the road may have an action against him. (Lambert v. Hoke, 14 John. 383 ; Herrick v. Stover, 5 Wend. 580.) In short, the road is the private property of the applicant. In the words of the statute, the road shall be for the use of such applicant, his heirs and assigns.”
This right of way is an incorporeal hereditament, in which the owner has an estate of inheritance. The owner of the land over which the road is laid has not lost the entire fee, but he has lost the beneficial use and enjoyment of his property forever. It *143 is not, however, material to enquire what quantum of interest has passed from him. It is enough that some interest—some portion of his estate, no matter how small—has been taken from him without his consent. The property of A. is taken, without his permission, and transferred to B. Can such a thing be rightfully done 1 Has the legislature any power to say it may be done 1
I will not stop to enquire whether the damages must not be paid before the title will pass. The difficulty lies deeper than that. Whatever sum may be tendered, or however ample may be the provision for compensation, the question still remains, can the legislature compel any man to sell his land or his goods, or any interest in them, to his neighbor, -when the property is not to be applied to public use 'l Or, must it be left to the owner to say, when, to whom, and upon what terms he will part with his property, or whether he will part with it at all %
The right to take private property for public purposes is one of the inherent attributes of sovereignty, and exists in every independent government. Private interests must yield to public necessity. But even this right of eminent domain cannot be exercised without making just compensation to the owner of the property. (Const. Art. 7, § 6.) And thus, what would otherwise be a burden upon a single individual, has been made to fall equally upon every member of the state. But there is no provision in the constitution that just compensation shall be made to the owner when his property is taken for private pur - poses ; and if the power exists to take the property of one man without his consent and transfer it to another, it may be exercised without any reference to the question of compensation. The power of making bargains for individuals has not been delegated to any branch of the government, and if the title of A. can, without his fault, be transferred to B., it may as well be done without as with a consideration. This view of the question is sufficient to put us upon the enquiry, where can the power be found to pass such a law as that under which the defendants attempt to justify their entry upon the plaintiff’s land 1 *144 It is not to be presumed that such a power exists, and those who set it up should tell where it may be found.
Under our form of government the legislature is not supreme. It is only one of the organs of that absolute sovereignty which resides in the whole body of the people. Like other departments of the government, it can only exercise such powers as have been delegated to it ¡ and when it steps beyond that boundary, its acts, like those of the most humble magistrate in the state who transcends his jurisdiction, are utterly void; Where, then, shall we find a delegation of power to the legislature to take the property of A. and give it to B., either with or without compensation 1 Only one clause of the constitution can be cited in support of the power, and that is the first section of the first article, where the people have declared that “ the legislative power of this state shall be vested in a senate and assembly.” It is readily admitted that the two houses, subject only to the qualified negative of the governor, possess all “ the legislative power of this state;” but the question immediately presents itself, what is that “ legislative power,” and how far does it extend 1 Does it reach the life, liberty or property of a citizen who is not charged with a transgression of the laws, and when the sacrifice is not demanded by a just regard for the public • welfare 1 In Wilkinson v. Leland, (2 Peters, 657,) Mr. Justice Story says : “ The fundamental maxims of a free government seem to require that the rights of personal liberty and private property should be held sacred. At least, no court of justice in this country would be warranted in assuming that the power to violate and disregard them—a power so repugnant to the common principles of justice and civil liberty—lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people. The people ought not to be presumed to part with rights so vital to their security and well being, without very strong and direct expressions of such an intention.” He added: “We know of no case in which a legislative act to transfer the property of A. to B. without his consent, has ever *145 been held a constitutional exercise of legislative power in any state in the union. On the contrary, it has been constantly resisted as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced.” (See also 2 Kent’s Com. 13, 340, and cases there cited.) The security of life, liberty and property, lies at the foundation of the social compact; and to say that this grant of “ legislative power” includes the right to attack private property, is equivalent to saying that the people have delegated to their servants the power of defeating one of the great ends for which the govermment was established. If there was not one word of qualification in the whole instrument, I should feel great difficulty^ bringing myself to the conclusion that the clause under consideration had clothed the legislature with despotic power; and such is the extent of their authority if they can take the property of A,, either with or without compensation, and give it to B. “ The legislative power of this state” does not reach to such an unwarrantable extent. Neither life, liberty nor property, -except when forfeited by crime, or when the latter is taken for public use, falls within the scope of the power. Such, at least, are my present impressions.
But the question does not necessarily turn on the section granting legislative power. The people have added negative words, which should put the matter at rest. “ No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land; or the judgment of his peers.” (Const. Art. 7, § 1.) The words “by the law of the land,” as here used, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the constitution into mere nonsense. The people would be made to say to the two houses, “You shall be vested with £ the legislative power of the state ;’ but no one 6 shall be disfranchised, or deprived of any of the rights or privileges’ of a citizen, unless you pass a stabiate for that purpose in other words, “ You shall not do the *146 wrong, unless you choose to do it.” The section was taken with some modifications from a part of the 29th chapter of Magna Charta, which provided, that no freeman should be taken, or imprisoned, or be disseised of his freehold &c., but by lawful judgment of his peers, or by the law of the land. Lord Coke in his commentary upon this statute says, that these words, “by the law of the land,” mean “by the due course and process of law;” which he afterwards explains to be, “ by indictment or presentment of good and lawful men, where such deeds be done in due manner, or by writ original of the common law.” (2 Inst. 45, 50.) In North Carolina and Tennessee, where they have copied almost literally this part of the 29th chapter of Magna Charta, the terms “ law of the land” have received the same construction. (Hoke v. Henderson, 4 Dev. 1; Jones v. Perry, 10 Yerger, 59; and see 3 Story on Const. 17. S. 661; 2 Kents Com. 13.) The meaning of the section then seems to be, that no member of the state shall be disfranchised, or deprived of any of his rights or privileges, unless the matter shall be adjudged against him upon trial had according to the course of the common law. It must be ascertained judicially that he has forfeited his privileges, or that some one else has a superior title to the property he possesses, before either of them can be taken from him. It cannot be done by mere legislation.
But if there can be a doubt upon the first section of the seventh article, there can, I think, be none that the seventh section of the same article covers the case. “ No person shall be deprived of life, liberty, or property, without due process of law ; nor shall private property be taken for public use, without just compensation.” In the Matter of Albany-Street, (11 Wend. 149,) where it was held that private property could not be taken for any other than public use, Chief Justice Savage went, mainly upon the implication contained in the last member of the clause just cited. He said : “ The constitution, by authorizing the appropriation of private property to public use, impliedly declares, that for any other use, private property *147 shall not be taken from one and applied to the private use of another.” And in Bloodgood v. The Mohawk & Hudson Rail Road Co. (18 Wend. 59,) Mr. Senator Tracy said, the words should be construed “ as equivalent to a constitutional declara - tioh, that private property, without the consent of the owner, shall be taken only for the public use, and then only upon a just compensation.” I feel no disposition to question the soundness of these views; but still it seems to me that the case stands stronger upon the first member of the clause : “ No person shall be deprived of life, liberty or property, without •due process of law.” The words <c due process of law,” in this place, cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property. It will be seen that the same measure of protection against legislative encroachment is extended to life, liberty and property ; and if the latter can be taken without a forensic trial and judgment, there is no security for the others. If the legislature can take the property of A. and transfer it to B., they can take A. himself, and either shut him up in prison, or put him to death. But none of these things can be done by mere legislation. There must be “ due process of law.” Perhaps the whole clause should be read together, (Matter of John and Cherry streets, 19 Wend. 659,) and then if it do not, as I have supposed, amount to a direct prohibition against taking the property of one and giving it to another, it con tains, at the least, an implication too strong to be resisted that such an act cannot be done.
Of course, I shall not be understood as saying that a trial and judgment are necessary in exercising the right of eminent domain. When private property is taken for public use, the only restriction is, that just compensation shall be made to the owner. But when one man wants the property of another, I mean to say that the legislature cannot aid him in making the acquisition.
This question is only new with us in its application to pri *148 vate roads. That a statute is unconstitutional and void which authorizes the transfer of one man’s property to another without the consent of the owner, and although compensation is made, was adjudged by this court in the Matter of Albany-street, (11 Wend. 149;) and again in the Matter of John and Cherry streets, (19 id. 659.) The same doctrine was held by the chancellor in Varick v. Smith, (5 Paige, 137 ;) and it was admitted by all the members of the court of errors who delivered opinions in Bloodgood v. The Mohawk and Hudson R. R. Co., (18 id. 9.) I might have contented myself with referring to these cases as settling the question; but in so grave a matter as that of declaring an act of the legislature unconstitutional and void, I wished very briefly to assign the reasons which had conducted me to that conclusion.
There cannot be a very great number of private roads in the state; arid as to most of those which exist, it is probable that the land owtiers have in one form or another consented to their use. And when we consider how liberally public roads have already been opened, and how easily they may be obtained when wanted, there cannot be many individuals who will be affected by our decision. But whatever consequences may follow, I am of opinion that a private road .cannot be laid out with-1 but the consent of the owner of the land over which it passes;
Cowen, J. concurred.