JOHN H. BENNETT AND E. P. HUNT, ADMINISTRATORS OF JOHN D. AMIS, DECEASED, APPELLANTS, *v.* SAMUEL F. BUTTERWORTH, AND MARY EMILY, HIS WIFE.

Where slaves are in the possession of a mortgagee, who renders an account of the profits of their labor and the expenses which he has incurred on their behalf, he must be held bound to exercise a reasonable diligence in keeping them engaged in useful employments.

It is not a sufficient excuse for allowing them to remain idle, to say that he managed them as they had been managed by their former master, the mortgagor.

If the mortgagee is charged with their hire from a period commencing three months after the death of the mortgagor, he is not charged too much.

Where the account of the master charged the mortgagee with a certain sum for their hire, exclusive of clothing, medical treatment, or other expenses, it was a correct mode of stating the account.

THIS was an appeal from the District Court of the United States for the District of Texas.

The facts are fully stated in the opinion of the court.

It was argued by *Mr. Harris* and *Mr. Crittenden*, for the appellants, and by *Mr. Howard*, for the appellees.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in chancery from the decree of the District Court for the District of Texas.

Butterworth and wife filed their bill against Bennett, and also against Hunt, who is administrator of Amis, representing that Amis, the father of Mrs. Butterworth, conveyed to her by deed, or bill of sale under seal, in consideration of natural love and affection, certain negroes named, on the 8th of April, 1846. That, a short time afterward, Amis died, and that Hunt, the

defendant, administered upon his estate.  That, on application to the administrator for the slaves, it was found they were in possession of Bennett, the other defendant, who claimed to hold them by an absolute bill of sale, executed in June, 1845, by the said Amis, and that the slaves were, and had been, from the date of the bill of sale or shortly afterward, in the possession and under the control of Bennett, who received the profits of their hire.  That the negroes were transferred to him to secure an indebtment, and also to secure future advances.  The negroes were demanded of Bennett, but he refused to surrender them, on the ground that his debt had not been paid.

In his answer, the defendant, Bennett, says, the negroes were in his possession at the death of Amis; that he is unwilling to surrender the possession of them until his claim shall be fully satisfied; he denies that the proceeds of the labor of the slaves were sufficient to discharge his debt, &c.

The defendant, Hunt, in his answer, states that, on the 1st April, 1846, in the lifetime of Amis, matters of difference between him and Butterworth were submitted to the arbitrament of James H. Smith and W. W. Humphries, who awarded that Butterworth should deliver to John D. Amis two negro men named, or pay $2,500; that other negroes should be delivered and certain moneys paid by Butterworth, and that he should do certain other things, &c.; and that Amis, on his part, should transfer all the interest he might have to any portion of the estate formerly owned by him, to Mary E. Butterworth, wife of the complainant.  And he alleges that Butterworth did not comply with the award on his part; and the defendant asks that he may be compelled to perform it; and that the bill of sale by Amis to Mrs. Butterworth, of the negroes, was given in pursuance of this award.

It appears that John D. Amis and William D. Amis, on the 15th of December, 1839, by an indenture, conveyed to Andrew Harris and others, their creditors, to whom they owed debts amounting to $73,269.88, a large amount of real and personal property, to secure the payment of that sum.  A large number of negroes were included in this transfer.

Bennett also pleaded in bar the recovery of a judgment by Butterworth against defendant in the District Court, for the negroes named in the amended bill, or, if the same could not be had, it was adjudged that he should recover twelve hundred dollars, the value of the negroes.

The court made an interlocutory decree, that the bill of sale was a mortgage, and that the complainants had a right to redeem, &c.; and James Love was appointed to take an account of the amount due Bennett on the mortgage, and also to take an

account of the hire of the negro slaves in the possession and under the control of Bennett; and the master was directed to credit him with any extraordinary expenditures which were necessary on account of the health of the ne ·   · and also for rearing the children, &c.; and that the mas    ̄hould report, &c.

A report was made by the master, as directed, which showed that the mortgage-money and interest had been paid by the hire of the negroes, &c., and that a balance was due to the complainant of $318.90.

Exceptions were taken to this report, which were overruled by the court, and a decree was entered confirming the report, and ordering the sum found due to the complainants to be paid, and that the negroes in controversy, in the hands of a receiver, should be delivered to the complainants.

On this appeal, the rulings of the court, on the exceptions taken, are the points to be considered.

The first exception is that, in his report, the master states: " The defendant has filed and proved an account marked No. 1, of the receipts and expenditures under the mode of management in said report stated, which he did not investigate," as he assumed a different mode of management to have been necessary to exempt the defendant, by the terms of the decree, from " wilful default."

In his report, the master says: " It appears in evidence that Bennett treated the slaves with unusual indulgence and humanity, and in the manner that was pursued by Amis in his lifetime. He rented houses for them, furnished them food and clothing with great liberality, and proper medical attendance when necessary.   That he sometimes hired them by the day, and sometimes by the month.   It is also in proof, that the negroes frequently hired themselves to others, and were paid by their employers."

The defendant having possession of the slaves, and an entire control over them, was bound to exercise a reasonable diligence in keeping them engaged in useful employments, so as not only to pay their necessary expenses, but also to obtain a reasonable compensation for their labor.   That he treated them with humanity, provided for their wants, and made them comfortable, is not sufficient.   Nor is it a sufficient excuse for him to say that he managed the slaves as they had been managed by Amis, their master.   Bennett held them as a pledge, and he was not at liberty to indulge them in idleness, as their master may have done.   In his peculiar relation, as trustee, he had active duties to perform; and we think the master did right in rejecting the account rendered, under a management which showed,

on his part, gross negligence, or in the language of the interlocutory decree, "wilful default."

It appears that Amis died on the 1st of August, 1847, at which time the slaves were in the possession of Bennett, and continued to be in his possession at the time the account was taken. Three months were allowed by the master, after the death of Amis, before the account commences; and as there was considerable sickness at Galveston, where the slaves were situated, "he allowed one hundred dollars as extraordinary expenditures for medical attendance, food, house-rent, and nursing." And he says he allowed nothing for medicine or medical bills, except during the prevalence of the yellow fever, because the allowance for hire was made on a basis which covered all deductions for loss of time or other contingencies.

The second exception is, that the master in an account, No. 2, filed by him, stated the charge for hire of the slaves as commencing on the 1st of November, 1847, when he was restricted from making such charge prior to the 20th of March, 1849.

No such restriction is perceived in the answer of Bennett, nor in any other part of the proceeding. It seems that Bennett was in possession of the slaves before the death of Amis, and as is alleged in the answer, at least a part of the hire was paid to Amis during his life. But the account for the hire is made to commence three months after his death, at which time it is admitted the estate of Amis was indebted to Bennett $1,433.72.

The third and last exception to the report is, "that the master, in account No. 2, filed, states a balance due complainants on the 1st of June, 1850, of $318.90, which is contrary to the evidence of complainants and defendant now filed with said report marked No. 3 and No. 4; and hath not, in his said report, allowed and credited the defendant the expenses proved to have been incurred in the management of the slaves.

As this exception refers to the evidence before the master, we have examined it, and although there s a discrepancy between some of the witnesses as to the hire of the slaves, yet the weight of evidence seems to be in favor of the report of the master. He made no special allowance for expenses, medical or otherwise, as he stated the allowance for the service of the slaves, at a sum which such services were proved to be worth, clear of all deductions for clothing, loss of time, or medical treatment.

It is probable that the sum allowed by the master exceeded, considerably, the actual money received for the hire of the slaves. But the negligence or want of attention by Bennett, in giving indulgence to the slaves, or in failing to have them suitably employed, should not excuse him from an equitable charge of what

they could have earned. On this basis the master acted in making out the account, and we think it was properly assumed by him. And in this view there appears to be no error or mistake in the account stated, which should have prevented the District Court from sanctioning it.

The charges by Bennett for the superintendence and management of the slaves, were not allowed by the master, nor the charge for commissions. These items, if the defendant were entitled to an equitable allowance for the services stated, would amount only to a small sum, and we think, under all the circumstances of the case, neither this omission, nor the other exceptions to the report of the master, are of a character to require the reversal of this decree.

There was no action on the plea in bar filed by Bennett, which is an irregularity, not important, however, to be noticed on the appeal. Nor does it appear that any notice was taken in the District Court of the award set up in his answer by Hunt, the administrator. As the consideration for the transfer of the slaves by Amis to his daughter was natural love and affection, as appears by the bill of sale, it could not have been considered as within the award stated.

The decree of the District Court is affirmed with costs.

### Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Texas, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby, affirmed with costs.