# RENSSELAER COUNTY COURT.

## SEARLES agt. CRONK.

A justice's judgment, rendered on the verdict of a jury, for the defendant, in an action of trespass, will be reversed by the county court on appeal, where it appears that the plaintiff would be entitled to *nominal damages only*.

*October Term*, 1869.

APPEAL from justice's judgment.

The action was trespass *quare clausum fregit*.

The complaint charged the defendant with having entered the plaintiff's close and taking therefrom a cow, then and there being in the plaintiff's possession.

The answer denied the allegations of the complaint.

The trial was by jury and resulted in a verdict of no cause of action.

The justice entered on the verdict a judgment against the plaintiff with costs.

The plaintiff appealed to this court from the judgment, alleging it to be without and against law and evidence.

The evidence clearly showed the entry into the plaintiff's close and the driving away therefrom of the cow, then in the plaintiff's possession, by the defendant, as alleged in the complaint.

It was also shown by the evidence that the cow—which is claimed by the defendant to have belonged to him and to have been of a wild and unruly nature and disposition, aroused and excited, perhaps, by being separated by him from her newly-born calf—had broken out of the lot of a person other than the plaintiff, in which she was pastured for the defendant, and ran in and upon the highway along

Searles agt. Cronk.

or past the close of the plaintiff, into which she broke and in which she was found trespassing by his wife and son, who by his direction placed her in the barn yard of and upon his close, where she was so found by them, and in which she afterwards remained until her rescue and removal therefrom by the defendant, about a couple of hours after her capture by them.

It further appeared from the evidence that the perambulation of the cow extended through the grass meadow and oat fields of the plaintiff, from and over which she had to be pursued and driven into his barn yard, from which she succeeded in emerging in her endeavor to escape from his close and custody, which was frustrated and prevented only by the vigilance and perseverance of his wife and son, by whom a considerable portion of the Lord's day was consumed in so doing.

From the nature of the instructions given by the plaintiff to his wife upon the subject, it is not improbable that this was not the first incursion of the cow into his close, and that it was his intention, should another occur, to seek redress therefor by proceedings under the statute authorizing a distress of cattle doing damage. This, the rescue of the cow by the defendant, which occurred before further steps could be taken by the plaintiff thereunder, prevented his doing, and the amount of the damages as well as the extent of the injury sustained by him by reason of the premises, were consequently not further shown or ascertained, but they were not necessarily either trifling or nominal merely.

The jury before whom the cause was tried was demanded by the defendant, and were taken by the constable who appeared for him before the justice, by whom the *venire* was issued and delivered to him by the defendant's direction.

BUTTS, *for plaintiff.*
WHITE, *for defendant.*

VOL. XXXVIII. 21

Romeyn, *County Judge.*—The defendant concedes, what cannot be successfully controverted, that the verdict of the jury, and the judgment of the justice founded upon it, in this cause, are without and against law and evidence, and must be reversed unless, as he claims, this court is at liberty to affirm the same upon the assumption that the plaintiff was entitled to but nominal damages therein. This, however, I do not feel at liberiy to do: 1st. Because I do not think I have any such discretion; and 2d. Because I do not think this is any such case.

1. This is a proceeding in error from a judgment of a subordinate tribunal of which this court has appellate cognizance only, and is not an application for a new trial of an action in the same court, of which it has original jurisdiction and about which it has a discretionary power; the distinction between which is recognized by the supreme court in *Cady* agt. *Fairchild,* (18 *J. R.,* 129,) where it is said, "there is ground for a distinction between granting a new trial and reversing a judgment on return to a *certiorari;*" and was acted upon by the same court in *Herrick* agt. *Stover,* (5 *Wend.,* 585, 589,) where it was held that the judgment of a subordinate tribunal will be reversed if erroneous, although the suit be vexatious and the plaintiff entitled to but nominal damages, as it was also in *Dixon* agt. *Clow,* (24 *Wend.,* 188.) where the same principle is applied and the question settled.

In a court like this, where much of the litigation consists of cases in which the amount involved is so diminutive as scarcely to relieve it from the operation of the rule, *de minimis,* while its consequences may be so serious to the litigant as to transfer his property to his adversary, consign himself to a prison, and commit his family to the poorhouse What would be left to the large class thus circumstanced, if the principle contended for by the defendant were applied to them, but the relinquishment of a legal claim, a compliance with an unjust demand, or submission to a tedious imprison-

ment for the unsuccessful prosecution of the one or resistance to the other.

That it is inapplicable to this court at least, is further apparent from the provision of the Code; the three hundred and fifty-first section of which repeals all statutes in force at the time of its adoption, providing for the review of judgments in civil cases rendered by courts of justices of the peace, and regulating the practice in relation to such review and directs that thereafter, the only mode of reviewing such judgments shall be by appeal as prescribed by chapter 5, of which it is a part; and the 366th section thereof, which requires this court upon the hearing of an appeal, such as this is, to give judgment according to the justice of the case, without regard to technical errors or defects not affecting the merits, and in doing so to affirm or reverse the judgment of the court below, which the 368th section thereof enacts, shall be with costs to be awarded by the appellate court to the prevailing party, and thus deprives, if it does not divest, this court of all or any option or discretion in the matter, save in regard to its granting or withholding a new trial of the cause in the justice's court, or the county court in the cases and for the causes authorized in and by the 366th section of the Code. (*Chapin* agt. *Churchill*, 12 *How.*, 367; *Cook* agt. *Swift*, 18 *Id.*, 454).

2. The prosecution was necessitated by the defendant's invasion of the plaintiff's domain. The action was proper for the redress of the injury for which it was brought to obtain reparation by the plaintiff, and is one to which the principle invoked by the defendant, has been deemed inapplicable. In *Ashby* agt. *White*, (reported in 1 *Salk.*, 19 and 2 *L. Raym.*, 955,) it is said by Lord HOLT: "A man shall have an action against another for riding over his ground though it do him no damage, for it is an invasion of his property, and the other has no right to come there. So if a man gives another a cuff on the ear though it cost him nothing, no, not so much as a little *diachylon*, yet he shall

have his action; for it is a personal injury." In *Mellor* agt.
*Spateman*, (1 *Saund.*, 346 *a.*) it is said by Sergeant WILLIAMS:
" Whenever any act injures another's right and would be
evidence in future in favor of the wrong doer, an action
may be maintained for an invasion of the right without
proof of any specific injury." In *Sedgwick on Damages* (3
*Ed.*, 44, 45,) it is said, in regard to the right invaded, that a·
verdict and judgment for the smallest amount is as effectual
as any sum, however large, for it establishes the fact of the
plaintiff's title; and that in the common case of trespass to
lands, the main object being, usually, to determine the right,
this principle becomes very important. In *Chapman* agt.
*Maine Manuf. Co.*, (13 *Conn.*, 269,) it is said: " Generally
when one encroaches on the inheritance of another the law
gives a right of action and even if no actual damages are
found, the action will be sustained and nominal damages
given." Indeed, had I a discretion in the matter, I should
deem its application to the case unauthorized by the law
or the facts of it. It is the theory of the law, and should
be the practice of the courts, to furnish a remedy and afford
relief for every wrong or injury, and it would be a disgrace to
the one and a reproach to the other to deny the former or
withhold the latter. *Ubi jus, ibi remedium*, (*Broom's Maxims*,
91). In *Ashby* agt. *White*, (2 *L. Raym.*, 955,) before cited,
Lord Chief Justice HOLT observes: If a man has a right
he must have a means to vindicate and maintain it, and a
remedy if he is injured in the exercise and enjoyment of it;
and indeed it is a vain thing to imagine a right without a
remedy, for want of right and want of remedy are reciprocal.
Indeed, so valuable has the maxim been considered that it
gave occasion for the first invention of the form of remedy
called an action *on the case*. The application of a different
principle to the case would be not only an abuse of judical
discretion but a mistake of legal presumption. The legal
presumption is, as we have seen, that he who has suffered
an injury, has sustained a loss and is consequently entitled

to recover on proof of the commission of the injury without proving the amount of the damages resulting from it, whether they be nominal, probable or possible, merely actual damages not being necessary to sustain an action. An invasion of a right being shown, the law holds injury to be the *probable* result and gives judgment against the wrong doer, against whom it presumes everything and not against the well doer, who is as much entitled to nominal as to actual damages. *Omnia praesumuntar contra spoliatorem.* It is equally so whether the absence of proof on the subject arises from design or inadvertance on the part of the plaintiff. In *Dixon* agt. *Clow,* (24 *Wend.,* 188,) before cited, which was an action of trespass for an entry by the defendant of the plaintiff's premises, and pulling down his fence, originating in a justice's court and removed into the common pleas, by plea of title interposed by the defendant and on the trial of which the latter court, the plaintiff's counsel declined to prove or give evidence of the amount of his damages and in which the jury, as in this case, found a verdict for the defendant, upon which a judgment was entered in the common pleas, against the plaintiff on which the latter brought a writ of error to the supreme court, which held that if he succeeded, as he did, in showing an unlawful entry upon his land or throwing down of his fences or exposure of his fields, he was entitled to a verdict for nominal damages at least, and that it was not necessary for him to prove a *sum* or that any particular *amount* of damages had been sustained; that the action was brought for the purpose of trying the extent of the defendant's right, and that every unauthorized entry upon lands of another is a trespass and whether the owner suffered much or little, he was entitled to a verdict for *some* damages.

In the present instance, the entry was unauthorized by the plaintiff, and was unjustified by the defendant, who neither pleaded nor proved anything exculpatory of it. In the *Tonawanda R. R. Co.,* agt. *Munger,* (5 *Denio,* 255); it is

said, that every unwarrantable entry by a person or his cattle on the land of another is a trespass, whether the land be fenced or not, and though the cattle entered from the highway and the land was unenclosed, and the owner exercised care to keep them in his own enclosure.   In *Blake* agt. *Jerome*, (14 *J. R.*, 406,) it was held that a person going or sending on the land of another, and taking away his own property, in that case a mare and colt, was a trespasser.   In *Hermance* agt. *Vernoy*; *J. R.*, 5, it is, also, held, that A.'s cattle is on B.'s land, confers no licence upon A. to enter and take it away, and that an entry by A. for that purpose, without the permission of B., is a trespass.

The hurt and trampling of the crops and fences as well as the loss of time and trouble of the plaintiff and his wife and son, occasioned, as they were, by the tortious act of the defendant and his cow, entitled the plaintiff to actual and perhaps, exemplary damages in this case.   In *Allaire* agt. *Whitney*, (1 *Hill, R.*, 487,) it is said by Justice COWEN, after referring to the admission of POWELL J., in *Ashby* agt. *White*, before cited, it would not be difficult in all such cases to show the degree of actual damages; that the time of the injured party had been consumed in doing a vain thing or one comparatively vain, and time was money.   In *Miller* agt. *Garling*, (12 *How. R.*, 203,) which was an action for the recovery of a heifer secretly taken from the plaintiff's possession, it was held he was entitled to recover damages for time spent and expenses incurred by him in searching for her, after she was taken by the defendant.   In *Ward* agt. *Vanderbilt*, (1 *Keyes, R.*, 70;) in the court of appeals, it is held that where on evidence submitted, a jury is satisfied that certain damages accrued to the plaintiff as sickness and loss of time, occasioned by the defendant as a common carrier of passengers, it may award such damages to the plaintiff, although, he has offered no evidence to prove that point; and that the fact that there was no evidence of the value of the plaintiff's time, did not pre-

clude it from giving him such compensation therefor, as it deemed reasonable; and if the loss of time was occasioned by the default of the defendant, the plaintiff was certainly entitled to compensation for it.

The result of my investigation of the subject is, that the jury acted under a misapprehension of both the law and the facts in rendering the verdict they did in this case, and that the judgment entered upon it by the justice must be reversed. In *Brown* agt. *Penfield*, (24 *How.*, 64,) it is held that where a referee decides against the weight of evidence and errs in the application of the rules of law, it is error of fact and of law, and that a wrong result upon undisputed evidence is an error of law, and the judgment on the report should be reversed. In *Rathbone* agt. *Stanton*, (6 *Barb.*, 141,) it was held that when upon any one question which is decisive against either party, there is evidence on one side, and none on the other, and the verdict has been given for the party who has given no evidence upon the point in question, the verdict will be set aside; and that if the county court does not reverse the judgment founded on such a verdict, it is the duty of the supreme court to correct the error by doing so itself.

A contrary disposition of the case would not only deprive the plaintiff of all remedy against the defendant for the damages and costs in and about the suit in the justices court, but would inflict on him the costs and expenses of and upon the appeal in this court, which might be justly considered an arbitrary exercise of judicial discretion.

Perhaps greater attention has been bestowed upon this case than its importance might seem to demand, yet not more than its investigation would appear to require, considering that no objection was made and no question was raised upon the trial by or on behalf of the defendant, either as to the sufficiency of the evidence or the amount of the damages which the plaintiff was entitled to recover therein.

Judgment reversed with costs.