JOHN BEVANS *vs.* WILLIAM SULLIVAN, PETER RITNER, AND THOMAS BEERS.—*December* 1846.

*B* filed his bill, charging a partnership, entered into between himself and three others, in a special business, by verbal contract; that it continued about a year, at the end of which time, he voluntarily withdrew, apprehending injury from the misconduct of his co-partners. The object of the bill was to procure an account, and payment over of his portion of the profits. One of the partners, in his answer, denied the existence of the

partnership, and claimed that *B* was employed by him for hire.   The two other partners admitted the partnership in their answers, and consented to an account.   HELD, that the answers of the two who admitted the partnership, were not evidence against the third partner, who denied its existence.

The general rule is, that the answer of one defendant is not evidence against his co-defendants.

The fact of the alleged existence of two partnerships, one of which was constituted of three persons, the other of the same three and another, will not make the answer of one of the three admitting the partnership, evidence, *as a partnership act*, against his other two partners, and thus establish the existence in fact of the partnership between the four, against the denial in the answer of one of the three partners.   Such a state of facts does not make an exception to the general rule.

When one partner is permitted by his answer to testify against a firm, of which he is a partner, it ought to be, because he is testifying against himself, as a member of the firm.

Difficulties to be encountered in stating accounts, are no grounds why accounts ought not to be decreed, where the court perceives they are necessary to the rights of the parties, and ends of justice.

Every reasonable presumption will be made against those partners, whose fault it is that the books of accounts of a partnership are imperfectly kept ; and if they claim to be entitled to other credits than those to which the books, at the close of the partnership, entitle them, it is usual to require of them very strict proof.

Circumstances stated, under which a court of equity will infer the existence of a partnership, in opposition to an answer denying it.

Where a bill alleged a partnership to have commenced and terminated at a particular day, and the proof established its commencement, a partner who insists that it was dissolved at an earlier period than that alleged, will have to prove it.

For personal services rendered by a partner, no compensation can be claimed, without proof of an express agreement, that he should be compensated for them.

APPEAL from the Equity side of *Allegany* county court.

The bill in this case was filed on the 29th September 1841, by the appellant, and stated, that on 1st September 1840, *John Bevans* and *Thomas Beers, Peter Ritner* and *William Sullivan*, entered into a verbal agreement, to become co-partners in the butchering business, in equal shares as to profit and loss; that it was agreed, that *J. B.* should be the active partner, should erect a slaughter house, buy and butcher the cattle, sell the meat, and collect the proceeds of all sales, *except to the partners;* that in consideration of the extra services, he was to

be allowed, in addition to his share of the profits, the usual per diem wages to a person engaged in such business, and also a fair compensation for the hire of his carryall and horse, which were to be employed about the business of the company; that the business commenced on the 1st September 1840, and was conducted by the partners with success to the 25th September 1841, when said partnership was dissolved; that the said *J. B.* discovered that his confidence was misplaced, that his partners were combining to defraud him of his just share of the profits, and were aiming to force him out of the business, with no other than daily wages; in consequence of which he notified his partners, and the public, of his voluntary withdrawal from the business, and called upon his partners for a settlement, according to their agreement, which they refused. The bill then proceeded to set forth the nature, character and extent of the co-partnership business, amount of profits made, and the possession of the books of accounts of the concern, withheld by the appellees; that his co-partners are largely indebted to the concern as purchasers. Prayer, for answers, an account, subpœnas, and for general relief, against the aforesaid appellees.

*William Sullivan* answered the bill, and denied any partnership with the parties, or either of them, as mentioned in the bill, and alleged, that he hired the complainant, *J. B.*, to work and carry on the butchering business for him, *W. S.;* that he furnished the capital, and the business was carried on for his sole risk, by his means, and for his use. The said *W. S.* admitted a partnership between him and *Thos. Beers* and *Peter Ritner*, in a contract with the *Baltimore and Ohio Rail Road Company*, but denied they were interested in the butchering business with him. The special manner of conducting the business relied on in the bill, &c., were also denied, and also all fraud and combination.

The answer of *Peter Ritner* admitted the alleged partnership in the butchering business, and the contract alleged in the answer of *W. S.*, between him, *P. R.*, and *T. B.*, with the *Baltimore and Ohio R. R. Co.*, for the construction and completion of the *Doegully* tunnel, that it was commenced in 1839, and completed in 1842; that owing to the extent and

importance of that contract, it became necessary that they should have connected with their work a separate butchering establishment, which led to the formation of the partnership for that object between the four, of the profits of which the complainant was to have *one-fourth*. This answer then proceeded to set forth the manner of conducting the partnership, for the purchase, slaughter, and sale, of cattle and meat, &c.; that the business yielded profits; that complainant had conducted himself faithfully; and that an account ought to be taken.

The answer of the other defendant, *Thomas Beers,* was substantially like that of *Peter Ritner.*

A commission was issued and a great variety of proof taken.

On the 13th October 1845, *Allegany* county court, (MARTIN, C. J.,) decreed as follows :

The bill in this case is filed against *William Sullivan, Thomas Beers* and *Peter Ritner,* in which the complainant charges the existence of a parol partnership in the butchering business, between himself and the defendants. Two of the defendants, *Thomas Beers* and *Peter Ritner,* admit the copartnership, as alleged in the bill; but it is denied by *William Sullivan,* and the controversy is between the complainant and this defendant. It is clear, that the answers of *Thomas Beers* and *Peter Ritner,* cannot be used against *William Sullivan* for any purpose. It is an established principle of evidence, that the answer of one defendant cannot be read in evidence against a co-defendant. If the complainant was interested in establishing a fact by the evidence of a co-defendant, he might have examined him as a witness, on interrogatories, and the witness would then have been subject to the cross-examination of the other defendant. To withhold from such defendant the privilege of cross-examination, would be unjust, and this injustice must necessarily follow from the practice, of permitting the answer of one defendant to be read in evidence against a co-defendant. This is the language of the Court of Appeals, in the case of *Hayward against Carroll,* 5 *H. & J.,* 520, subsequently adopted by the same court, in *Jones against Hardesty,* 10 *G. & J.,* 415, I therefore put entirely out of view the answers of *Beers* and *Ritner.*

A very different character has however been assigned by the law to the answer of *William Sullivan.* It has been made evidence by the complainant, and being responsive to the bill, must be received as true, unless contradicted by two witnesses, or one witness, with corroborating circumstances. This defendant has denied the existence of any partnership as charged in the bill; and an answer thus positive, and responsive, in its averments, in reference to a matter within the personal knowledge of the party, can only be overcome by strong and clear proof. The question is, has this answer been disproved? In my opinion it has not.

I do not consider it necessary to enter into an extended view of the conflicting and irreconcilable evidence taken in this cause. After a careful examination of the testimony, I am satisfied, that a partnership, as alleged by the complainant, has not been proved. The bill therefore must be dismissed.

An appeal from that decree was prosecuted by the complainant below.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MAGRUDER, J.

By PRICE and McMAHON for the appellant, and
By McKAIG and SCHLEY for the appellees.

MAGRUDER, J., delivered the opinion of this court.

On the 29th September 1841, the appellant filed his bill of complaint against the three defendants, charging, that on or about the first day of September 1840, the four entered into a partnership in the butchering business; each to have an equal share of the profits, and to bear an equal share of the losses: the complainant to be the active partner in the business. By the terms of the agreement, which was a verbal one, the appellant was to be compensated for his services, and for the use of his horse and carryall, to be employed about the business of the co-partnership. It is charged, that the business was commenced on the 1st September 1840, and was continued until the 25th September 1841, when, for the reasons stated in the bill of complaint, the partnership was dissolved by himself, and the

defendants when called upon, refused to settle the partnership business.

The bill prays, among other things, that an account may be taken of the business of the partnership.

Two of the defendants, *Beers* and *Ritner*, admit a partnership, as stated in the bill of complaint, and consent that an account be taken, as asked.

The other defendant, *Sullivan*, denies that any such partnership ever existed, and insists, that the butchering business, during the whole period, was carried on with his funds, and for his own individual profit, and that the complainant was employed by him, and to receive wages.

Much proof was taken by the parties, and the case having been submitted, *Allegany* county court, setting as a court of equity, dismissed the bill of complaint. From that decree an appeal was taken, and thus is presented for our decision, the question, whether the complainant is not entitled to an account? or in other words, is a partnership proved to have existed between the parties in the butchering business, as charged by the complainant?

Testimony of various descriptions is relied on by the complainant, to prove the partnership. Among other things, it is insisted, that the answers of *Ritner* and *Beers*, the co-partners of the other defendant in a different concern, are evidence against that defendant, and this because, it is said, the firm of *Ritner*, *Beers and Sullivan*, contributed three-fourths of the capital, and were entitled to three-fourths of the profits in their partnership character; in other words, that it was a partnership consisting of two parties, the firm of *Ritner, Sullivan* and *Beers*, being one of them, entitled to three-fourths of the profits, and to contribute three-fourths of the capital; and the complainant was the other partner, to contribute one-fourth of the capital, and receive one-fourth of the profits.

It is not deemed necessary to inquire, at this time, whether this be a correct account of the partnership, it being the opinion of the court, that if such appeared to be the fact, still the answers of *Beers* and *Ritner*, filed in this case, would not be evidence against their co-defendant. The general rule, unques-

tionably, is, that the answer of one defendant is not evidence against his co-defendant: and this is said to be a strict rule. The reason assigned for it is, that there is no issue between the parties, and no opportunity existed for a cross-examination. Exceptions have indeed been made to this rule, and in a few cases, the answer of one partner has been used as evidence against the others. The case before us, however, ought not to be admitted among the exceptions. The question between these four individuals is, whether a business which is regarded as profitable, was carried on by the four in partnership, or by one of them only, and for his exclusive profit. The other defendants have an interest in direct conflict with that of *Sullivan*, and their admissions would be for their own benefit. They might have been complainants in this case, and if they had united with the appellant in this application, there would have been as much propriety in contending, that the statements in their bill being the declarations of the partners of *Sullivan*, in the other firm, would be evidence against him.

It can scarcely be contended, that in answering this bill they are acting within the scope of their authority, as partners of the older firm.

The answers of the two, indeed, are not offered as evidence against the other defendant, because they are the answers of co-defendants, but, because they are declarations and admissions of co-partners. If for this reason such declarations were admitted as evidence, then the unavoidable consequence would be, that every thing in relation to the second co-partnership, which the defendants, (*Ritner* and *Beers*,) introduced into their answers, whether responsive or not to the bill, would be evidence for themselves, by being evidence against *Sullivan*, who is denying that they have any interest in the profits of the butchering business.

When one partner is permitted by his answer to testify against a firm, of which he is a partner, it ought to be because he is testifying, not for, but against himself, as a member of that firm. In this case, however, it is asked, that they be permitted to testify for themselves as well as for the complainant.

It is insisted however, that if the answer of *Beers* be not evidence againt *Sullivan*, for the reason already noticed, the declarations of the former are evidence against the latter, because of a combination or conspiracy, to which they were parties at one time, to defraud the defendant *Ritner*, and the appellants, of their share of the profits of the concern.

Granting the combination with such intent to be proved :— "Every act and declaration of each member of the conspiracy, in pursuance of the original concerted plan, and with reference to the common objects, is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against them. * * * * Care must be taken that the acts and declarations thus admitted, be those only which were made or done *during the pendency of the criminal enterprise, and in furtherance of its objects.*" 1 *Greenleaf on Evid., sec.* 111.

If, in deciding the question now submitted to us, it was necessary to ascertain which of the declarations of *Beers* are, by this law, made evidence against *Sullivan*, some difficulty would arise. It may be said with confidence, that the appellant cannot claim the benefit of any admission in *Beers'* answer. If the conspiracy alleged once existed, this answer certainly was not prepared "in furtherance of its objects."

The view, however, which is taken of this case, will render it unnecessary to discuss this part of it, and it will be dismissed with the observation, that the defendant, *Sullivan*, cannot be allowed to set off those declarations of *Beers*, which, if admitted as evidence, would prejudice the claim of the appellant against those of a different character, on which the latter may have a right to rely.

The defendant, *Sullivan*, admits, that the butchering business was carried on, but denies the partnership, and insists, that the others were too poor to contribute the necessary funds. Upon this, and the probabilities of the case, we have listened to much discussion, and have been furnished with many references to the books of the business.

It has not, however, been shown to the court, that this business, conducted as it was, required any considerable amount of capital. The sales were rapid, the profits, it is quite reason-

able to suppose, were considerable, and *Sullivan* himself was generally in the receipt of the funds, which were from time to time to be employed in the purchase of other cattle, which were to be sold to the workmen employed by the older company, and for the proceeds of sale that company was responsible. Other proof than that which has been furnished by *Sullivan*, and the entries in the books, would be necessary, in order to prove that monied men only could engage in this business.

The want of capital is the reason assigned, why not only the appellant, but the other defendants, could not have been partners in the butchering business. Surely, if they had capital sufficient to be members of the company, to which the name of the *Doegully Company* has been given, we cannot take it for granted, that they could not procure the requisite capital to undertake the business of supplying with food the men whom they employed, and whom they were obliged to pay, in goods and in meat, or in money.

It has been urged as an objection to the relief which is sought, that the books were so kept that the accounts cannot be stated. The proof of the first cost of the articles, we are told, is not to be had, and there is nothing to show the amount of the expenses;—all this may prove, that the difficulties to be encountered in stating the accounts, will be unnecessarily great. Every reasonable presumption will be made against those whose fault it is that the books are so imperfect, and if they claim to be entitled to other credits than those to which the books, at the close of the partnership, entitle them, it is usual to require of them very strict proof.

In the course of the argument, it seemed to be conceded by the counsel for the appellees, that there was some evidence to be found in the record, that the parties, at one period, contemplated a partnership; something is proved which could not have existed, if the parties who composed the elder firm, at one time had not designed to form a partnership in the butchering business. There is testimony to that effect. It was evidently thought, that it would be of advantage to the firm of *Ritner, Sullivan and Beers*, to supply the workmen with meat; and it is also evident, that in their opinion, in order to

form a partnership for this purpose, it was necessary to introduce into it, as a partner, a fourth person, to be the active partner in the business, and that person to be a butcher. Hence the application to *Johnson,* to whom no proposition was made to become the agent of the other firm, at any fixed salary, although they failed in their effort to induce him to become a partner, and receive a portion of the profits of the business. It appears also from the testimony of *Johnson,* that *Sullivan* and *Beers* had, previously to the fruitless negotiation with the witness, had either made proposals to, or received proposals from, the appellant. It may also be inferred from the testimony of this witness, that they would have preferred him as a partner to the plaintiff, if the former would become a partner, upon as favorable terms as those which had been offered by the latter.

In this testimony, however, it is said, there is something inexplicable:—one agreed to take one-half of the profits, the other, it is true, proposed to take only one-fourth, but he was also to be compensated for his services, and for the use of his horse and carryall; and the compensation to be claimed for his own services, and the use of the carryall and horse, added to the one-fourth, exceeded, it is supposed, the portion of the profits, which, if offered to him, would have induced this witness to be a partner.

Of this there is no proof, and besides it does not appear that the witness owned any horse or carryall, or, if he had, that the company was to have the use of them without making compensation therefor. We infer from what is said of the horse and carryall of the appellant, that the company would occasionally want to use a horse and carryall; that the appellant had those articles, and if he became a partner in this new business, he might thereby secure considerable employment for his horse and carryall. But there is no proof to warrant the belief, that by any agreement between the appellant and the defendants, the appellant was bound either to keep a horse and carryall during the existence of the partnership, or, if he had them, would not be at liberty to employ them elsewhere, when they could be employed elsewhere, with greater profit to their owner.

We have then in the deposition of this witness, satisfactory proof that *Sullivan*, as well as *Beers*, wished to have a slaughter house, for the accommodation of the workmen in the service of their company; that they designed to have a considerable interest in that business, but in order to engage in it with the greatest advantage, it was of importance to secure a fourth person, and he a butcher, not to be engaged as an agent, with a salary, but as a partner, to perform the services to be required of him for a certain portion of the profits. We have proof, that two of the partners, (*Sullivan* one of them,) were at one time in treaty with the witness, (*Johnson*,) acknowledged, that they had already been treating with the appellant, and that the terms upon which he would become a partner, were more favorable than those to which the witness would accede. They separated from the witness without, as far as we can learn, applying to any other person, and shortly after the failure of the negotiation with *Johnson*, we find the appellant in the place, and performing the duties of this fourth partner. All of this appearing in the case, surely very little more proof is necessary to satisfy us, that after the negotiation failed with *Johnson*, the defendants secured the services of the appellant; and upon the terms already suggested, it not appearing that the appellant ever consented to be that fourth partner, upon any terms less favorable to himself, than those on which he had previously offered, to associate himself with the defendants in the butchering business. But little more proof is wanted to establish the partnership, and for this proof we need only to refer to the depositions of *James Mullin*, *Leonard Moore*, and *Peter Lyons*, and the admissions and declarations therein proved to have been made by *Sullivan* himself.

It is true, indeed, that there are some declarations, which witnesses tell us, were made by the appellant, leading to a different conclusion. But in answer thereto, it may be said, that there existed reasons why the appellant wished his creditors to remain ignorant of his interest in the firm, and remain under the impression, that he was employed by the month or year. Upon these declarations, and the credit due to the witnesses who speak of them, it seems to be unnecessary now to

insist, as they can be used rather to prove that the partnership did not continue, as long as the appellant alleges, and not that it was not formed.

The conclusion, then, to which all this testimony brings us, is, that a partnership once existed between the appellant and the three defendants, and was commenced in September 1840. For what length of time it was continued, it is unnecessary to decide, until the auditor makes his report.   Of course it is for him who denies that it continued as long as the appellant alleges, to prove that it was dissolved at an earlier period. The account ought to be ordered, and in taking it, it will be necessary to report upon the claims of the creditors, and among these will be placed the claim, if any such is established by the appellant, for services, and the use of his horse and carryall, this being the claim of the individual against the firm of which he is a member, and depending for its amount upon the time that the company had them in its service.   For personal services rendered by a partner, no compensation can be claimed, without proof of an express agreement, that he should be compensated for them.

The court will sign a decree, reversing the decree of the court below, establishing the partnership, and the commencement of it, as above stated, and remanding the case to *Allegany* county court, sitting as a court of equity, in order that an account of the partnership transactions may be taken, and a final decree be passed, according to the proof now in the case, and such further testimony as may be authorised to be taken.

                    DECREE REVERSED WITH COSTS.