## George C. Page, receiver, etc., v. William Stephens and others.

*Statements not against one's own interest, not evidence : Admissions.* A person, who holds an assigned security as collateral, cannot by his statements concerning the transaction, make evidence in favor of a subsequent holder against his assignor, and his declarations can only be received so far as they operate as admissions against his own title.

*Deposition of defendant in his own behalf, rejected where he fails to submit to cross-examination.* A defendant testifying on his own behalf, and failing to appear at the proper time for cross-examination, forfeits the right to use his deposition, and it will be suppressed.

*Individual liabilities of trustee: When not an offset against debt due the trust fund.* An assignee for the benefit of creditors, who sells the assigned stock on credit, cannot create an offset or payment in reduction of the price by incurring liabilities to his vendee, who knew of the trust, for articles knowingly furnished for his personal use and not on account of the trust fund; and a subsequent trustee, appointed in his place, will not be compelled to allow such debts of his predecessor in reduction of the purchase debt.

*Effect of suppression of important documentary testimony.* Where questions arose concerning money payments, sworn to from reliance on books of account, the failure, without excuse, to produce the books for scrutiny, furnishes reason for disregarding such evidence. The suppression of important documentary testimony, under such circumstances, justifies presumptions against the party who should have produced it.

*Heard July 12 and 13. Decided October 3.*

Appeal in Chancery from Washtenaw Circuit.

This was a bill filed by George C. Page, receiver of the firm of Tyler & Peatt, against William Stephens, Harriet M. Jeffries and Henry Hall, to foreclose a . mortgage given by said Jeffries to said Stephens, to secure the payment of four thousand two hundred dollars, and by said Stephens assigned to Benjamin K. Rathbun, assignee for the benefit of credit-ors of said firm of Tyler & Peatt, to secure the payment of three thousand five hundred and nine dollars and ninety cents. Subsequent to said assignment by Stephens to Rathbun, the complainant, Page, was appointed receiver of said Tyler & Peatt, and thereby succeeded to the title of said Rathbun, as assignee of said firm, to said mortgage. Hall was made defendant by reason of his having acquired some subsequent interest in the mortgaged premises.

Stephens alone answered, alleging that he had paid all the indebtedness to Rathbun. The bill was taken as confessed by Jeffries and Hall. Proofs were taken, and on the hearing a decree was granted in favor of the complainant, from which the defendant Stephens appealed to this court.

*Hiram J. Beakes* and *C. Joslin,* for complainant.

*Lawrence & Frazer,* for defendant Stephens.

CAMPBELL, CH. J.

This is a foreclosure suit, but the controversy does not arise upon the original mortgage, but upon its ownership. It was held by defendant Stephens previous to October 20, 1866, at which time he bought a stock of goods held by Benjamin K. Rathbun, as assignee for the benefit of creditors of Tyler & Peatt, and gave Rathbun his own note for three thousand five hundred and nine dollars and ninety cents, payable without interest in four semi-annual installments, the first three of one thousand dollars each, and the fourth for the balance. This note he secured by an assignment of the mortgage in controversy; and he claims that he has paid all or most of it. On January 21, 1868, complainant, upon the application of creditors, was appointed receiver of the Tyler & Peatt assets, and Rathbun divested of his control.

The answer is general and avers entire payment of the note at maturity. But the payments to which the testimony is directed consist of goods furnished and money paid to Rathbun at intervals from before the sale till January 25, 1868. The circuit court rejected the defense as not made out.

There are some questions concerning the admission of testimony, which may require notice. But the view we take of the facts will not make it essential to decide

upon the competency of some other testimony which has not made any decisive impression of correctness on our minds.

The statements of Rathbun, except as they operate as admissions made while he held the securities, cannot be regarded. To the proof of such admissions we have given such weight as it seems to demand, and we have not found it necessary to decide how much of it may have been of doubtful validity. There is some dispute as to dates, which might have rendered that inquiry pertinent, if the evidence had been of a more satisfactory character in its substance.

We think the testimony of Stephens was properly rejected. Having been examined in chief on his own behalf, his cross-examination was postponed on his own request, with the understanding that it should be continued on the first half-day when complainant should be ready to take testimony. When that time came, although in Ann Arbor, where the testimony was being taken, and although he and his counsel were distinctly notified of the consequences, he failed to appear. The circuit court, on the motion to suppress, made the suppression conditional, and allowed the proofs to come in if he would appear and be cross-examined and pay forty dollars costs, which he would.not do. Under these circumstances there would be no propriety in allowing his direct testimony to stand. It is, perhaps, proper to say that, except as to a small portion of the defense, it does not add materially to the case made by the other witnesses, and does not raise such a belief in his equities as would render it a proper case for the court, of its own motion, to refer the case back in any shape for more information.

In order to comprehend the effect of the proofs, it will be more convenient to change the order of evidence, and refer in the first instance to the negative proofs of the

complainant; for the facts sworn to by defendant's witnesses are materially explained or modified by those proofs.

Complainant, who sues in a representative and not in a personal capacity, swears positively to conversations with Stephens at different times after the securities became vested in him as receiver, in which Stephens recognized his full liability, and promised to pay, and made no pretense of any previous payment. At a subsequent time, and when, from a comparison of dates, it is shown that Rathbun was dead, he for the first time claimed to have an offset for moneys paid Rathbun. On being asked if he had receipts, and being told Rathbun had sworn no payments had been made, he made no reply as to receipts, but said he could prove his claim by Hall. Hall's testimony fails to show any thing beyond the fact that Rathbun frequently received money and goods from Stephens. It does not show that these payments or articles had any thing to do with this transaction, and does not show any particular amount paid, or that the sums were considerable.

Tyler swears that after Rathbun's death Stephens said he had paid nothing on this note. It appears that Rathbun held another note of a thousand dollars against Stephens, in no way connected with the note in controversy here, but an individual transaction,—which probably may have had some part in confusing the witnesses upon some points, and may account for the advances. It is evident there were much more extensive dealings than the proofs fully explain.

In January, 1869, Col. A. D. Crane, who had professional reasons for getting the information, inquired particularly of Stephens, whether he had made any payments on the note in controversy, and Stephens said he had made none, but that he had a small account against Rathbun which he had promised to turn upon it.

There can be no doubt that Stephens had an account

current against Rathbun, reaching back a considerable time before he bought out the stock of goods, and that, besides goods, there were more or less cash items in it. But, in the face of the positive proofs referred to, and in view of the fact that the transaction in question was known to be, and was upon its face, a fiduciary one, it would require a very clear showing (aside from all legal questions as to the validity of such an arrangement) to connect this account with the claim due Rathbun as assignee.

Assuming (what we think is not made out in any satisfactory way) that a balance was struck April 20, 1867, at the time when the first one thousand-dollar installment on the note in question matured, we have this remarkable state of things. The amount of money claimed to have been advanced up to that time, was one thousand three hundred and ninety dollars and fifty-five cents, on which interest, seventy-five dollars and sixty-three cents, was charged from the date of each payment. The amount of goods furnished was four hundred and two dollars and twenty-seven cents (out of which some items may perhaps be more properly cash items, as set forth in detail, but they are summed up as goods). The whole amount thus made up is one thousand eight hundred and sixty-eight dollars and forty-five cents. Of this sum, seven hundred and thirty-six dollars and ninety-three cents appears to have been advanced prior to the date of the purchase from Rathbun, and to the giving of the note. This was, of course, a private transaction, and could not have been based on the credit of the purchase. But if, as claimed, it was to apply on the purchase, it is impossible to see how it happened that it was not then applied in reduction of the face of the security given to cover the purchase, especially as that security was to draw no interest, while interest was charged on all the cash advances.

23 MICH.—46.

It is also noticeable that within about three weeks from the date of the note there appears a cash charge of seven hundred dollars, which, with the previous cash items, would more than exhaust the first installment. It is not apparent, and does not seem likely, that this sum, if advanced, could have been for any legitimate trust purpose; for no dividend could be required until the proceeds of the goods should accrue, and no money was needed by the trust for any outside purpose. No receipt was taken, and no indorsement was procured. There is nothing in evidence to show that, in case of dispute, this item could be established by any testimony that would have been admissible in case of Rathbun's death, had a controversy arisen between his estate and Stephens. It would have been a matter known only to the parties and not provable by the survivor. This is not the usual way of doing business; and it is, therefore, important to consider what kind of proof is presented.

Laying aside the deposition of Stephens, there is no testimony tending to prove any part of the defense in a tangible shape, except that of Potter and Stype. Lewis and Tuttle testify to an understanding, but very loosely. There are some other witnesses who swear to the existence of dealings between Rathbun and Stephens, but very little more. They show no specific important facts. Stype testifies to an agreement by Rathbun to allow or indorse the balance which he says was struck April 20, 1867, upon the note. Potter speaks of an understanding of that kind, but too vaguely to be of any value as evidence. Neither of them can testify as to any considerable number of items, of his own knowledge. Each depends entirely on the charges alleged to have been made. There is no documentary evidence of payment unless it can be inferred from an order signed by Rathbun, dated Grand Rapids, November 8, 1867, directing Mr. Gibbs, the depositary of the securities, to give

Mr. Stephens the "first note" due Tyler & Peatt, creditors, by him as assignee. If defendant Stephens' claim were correct, the amount due him at that time would have absorbed the second installment as well as the first, and still left a balance. No explanation is given or offered of this paper, and as there was no separate note for any of the installments, but all were included in one, it needs explanation.

We are thrown back entirely upon the proof of the accounts. And upon these there are several unavoidable comments. The books are not produced at all; neither the books of original entry nor the ledgers are shown. We are not informed, therefore, by any thing that would be reliable, whether these items all occur in the same set of accounts; nor whether they are charged individually, or in the assignee's account; nor whether the items were set down at their respective dates and in proper order; nor whether there is any credit side to the account. Stype, who professes to swear from the accounts, says he cannot give the exact dates. Where so much depends on the fullness and accuracy of the entries, it would be altogether improper and dangerous to dispense with their scrutiny. Every presumption must be made against them when withheld.

But some of these alleged payments are not pretended to have been made to Rathbun, at Dexter. It is said the money was sent to him at Grand Rapids. If so, there must have been correspondence and vouchers. It cannot be supposed that any business man would do business and make remittances in this way without preserving something to indicate it. The letter inclosing the order on Gibbs must show something, and there must have been other papers which would be pertinent, and which would be the most natural evidence that would occur to any one. And in this connection we cannot help noticing, that upon the direct examination of defendants' witnesses, there is

hardly any statement of details. The testimony is so sweeping as to be hardly admissible. In a case where the whole defense turns on clear proof of payments to apply on the note in controversy, the evidence should be of a very different character.

Such as it is, it does not, in our opinion, go to sustain the defense. The account, embracing money and goods, covers items accruing both before the sale to Stephens and after the appointment of the receiver. The goods are not, in any instance, so far as appears, such as an assignee of an insolvent estate could lawfully acquire at the charge of the estate. The moneys do not appear to have been needed for any such purpose, and they were not usually due when paid, and interest was charged upon them. The inference is inevitable, that if fair and proper, the accounts were private and not trustee accounts, and were so considered. It would have been a practical fraud to apply trust funds to pay them, and Stephens was entirely familiar with all the facts. We are not required to consider what might have been the effect had Rathbun actually applied the money as received, by receipting as trustee or by indorsing it on the paper, for no such receipt or indorsement was made. Giving to the transaction all the force it can possibly have, and assuming—what is not proved—that the charges are fair and accurate, and that the books show no credits, we have no more than the agreement of a trustee, without even any consideration clearly appearing, to accept his private indebtedness in payment of a claim due to the trust estate. Such an agreement does not enforce itself. There is no such identity of interest as to operate a merger or discharge. The trust passed into other hands, while the agreement, if there was one, remained executory, and it was no longer in Rathbun's power to carry it out, even if he could legally have done so otherwise.

There is no theory which can sustain the validity of the defense in this case. We have gone over the various features of the cause very carefully, on account of the necessity which existed of suppressing defendant Stephens' deposition, in order to ascertain whether there could be any likelihood of injustice arising therefrom. And we have for this purpose considered the evidence in a more favorable light than in many respects we think it will bear. We do not differ with the circuit judge in the view he took of it. We discover no ground whatever for the defense.

The decree must be affirmed, with costs against the appellant.

COOLEY and GRAVES, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.