CASE 90—EQUITY—OCTOBER 26, 1882.

## Benjamin, &c., v. Ellinger's adm'r, &c.

APPEAL FROM KENTON CHANCERY COURT.

1. That a written contract between appellant and her husband was executed during his life-time, by which some provision was made for her, is admitted by appellant, and is apparent from the record. But appellant withholds the paper.

2. Appellee is entitled to the production of the contract, and appellant refusing to produce it, every intendment and presumption is to be made against her.

Benjamin, &c., v. Ellinger's adm'r, &c.

3. The secondary evidence in a case like this must be held to apply not only to the contents of the paper, but also as to its execution.

4. The absence of the paper so withheld necessarily creates the presumption that if produced by appellant it would sustain appellees' statements as to its contents.

STEVENSON & O'HARA FOR APPELLANT.

1. If appellees rely upon the admissions in the answer that a writing was executed, they must take the whole statement as though they were making proof of an admission *in pais*, when, by well settled rules of evidence, they would be obliged to take the whole statement or none.

2. Without presuming the existence of an antenuptial contract not proved, the judgment cannot be sustained.

3. Appellant denies that there ever was an antenuptial contract, and her denial must be taken as part of her statement. (Withers v. Richardson, 5 Mon., 94; Glascock v. Hays, 4 Dana, 58; McLain v. Esham, 17 B. Mon., 155.)

B. P. DOUGLASS AND CLEARY & SCOTT FOR APPELLEES.

1. Appellant, in effect, admits the existence of a writing signed by her in her maiden name, purporting to be an antenuptial contract, such as that described in the cross-petition.

2. We think it may be assumed that the contract was made before the marriage. When appellant refused to produce the paper, parol evidence of its contents was admissible. (Phillips' Ev., 452; 8 Taunt., 450; 1 Starkie on Ev., 353.)

3. Appellants' refusal to produce the paper authorizes a strong presumption to her disadvantage. (1st Starkie on Ev., 507; 1 Greenleaf, 37; Starkie on Ev., 353.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Jacob Ellinger died intestate in the county of Kenton, having been twice married, and without leaving a child or children surviving him. The appellee, Robert Simmons, administered upon his estate, and for the purpose of settling his accounts, filed a petition in the Kenton chancery court, making the heirs of said Ellinger and his widow, Mary Ellinger (now Benjamin), defendants, and alleging, among other things, that an antenuptial contract was entered into between the widow and her deceased husband, by which

the widow agreed to accept six thousand dollars in full satisfaction of all and every claim she might have upon the estate of her husband at his death by reason of the marriage. The heirs of the intestate also file an answer, which is made a cross-petition against the widow, containing the same averments with reference to the marriage contract, and alleging that the widow had it in her possession *after the death* of her husband, and call upon her to produce it.

The widow, in answer to the original and cross-petitions, denies that any contract was made between herself and husband with reference to his property before or after the marriage, or that they at any time entered into the agreement set out in the petition. She states that after the marriage her husband presented to her a writing, made with his own hand, and requested her to sign it with her maiden name, *Mary Moberly*, which she did in his presence, not knowing its contents, except as he told her it was a provision for her out of his estate. Upon reading it, she found it provided that, after his death, she should have six hundred shares of stock in the Little Miami Railroad Company, of which stock he was the owner at the time, and also such dwelling-houses as he might own at his death. She denies having any writing, and says that, before her husband's death, he informed her the writing was of no value—that she was otherwise provided for, and took the instrument out of her custody, and for that reason she is unable to produce it. Various rules were issued and served on the widow (the appellant) to produce the paper, to which she responded, insisting that she had no such writing as set forth by the appellees, nor had she the other writing in her custody since the death of her husband.

After the issues were made, the deposition of George N. Buffington was taken, who states, in substance, that he had been the pastor of a Methodist Church in Covington for two years, and that during his pastoral charge he was intimately acquainted with the intestate, and also knew his wife during that period. He was then asked if he knew anything of a marriage contract between the intestate and the appellant; if so, what were the contents of that contract, &c. The witness, after an objection by the appellant to this character of testimony, proceeded to say: "I saw a marriage contract between them at his residence on Greenup street, in Covington, Kentucky. It was after the appointment of the administrator of Jacob Ellinger's estate. My recollection of the substance of the same was, that if she would become and remain his wife, he was to give her not to exceed $6,000 nor less than $5,000. This is my recollection; this is all that I remember as to the substance of the contract, and I do not know what became of the contract. My recollection is, that it was signed by Jacob Ellinger, Mary Moberly, William Jones, and Mary Jones. It was on ordinary letter paper, and written with ink."

Being further interrogated, says: that the names of William and Mary Jones were written after the others. I do not recollect the date of the paper. It was in the possession of Mrs. Jacob Ellinger, and she delivered it to me. I held the paper long enough to read it. I held it in my hand while I read it, and delivered it to Mrs. Ellinger immediately after I read it, and have never seen the paper since that time. Mrs. Ellinger drew it from a bundle of papers in her hand. The witness, on cross-examination, says that he cannot recollect the language or words. There was nothing said in the writing about dower.

The appellees then took the deposition of William Jones, who says that Mary Moberly lived with him two years before she went to live in the home of the intestate (this was prior to the death of the first wife of the intestate) ; that he did not know of any such contract, and had no recollection of signing any such writing.   In response to an inquiry by counsel for the appellees, this witness says he did not tell the administrator (Simmons) that he had witnessed a contract between Ellinger and his wife, and did not remember what he did say in reference to the inquiry made by the administrator.    The administrator testifies that Jones informed him that he had attested a paper between Ellinger and his wife, but could not recollect its contents.    The wife of Wm. Jones is dead.

This is the substance of all the testimony in the case, and upon the hearing, the chancellor gave the widow the sum of six thousand dollars as her distributive share, holding that such was the contract made between herself and husband prior to their marriage.

Counsel for the appellant insists that there is an entire absence of proof as to the existence of such a contract, and this is the only question involved in the case.

The subscribing witnesses to the contract, from the testimony of Buffington, was Jones and wife.   Mrs. Jones was dead when this action was instituted, and her husband swears that he never attested such a paper.   •

He doubtless informed the administrator that he attested a contract between the husband and wife, but when placed on the witness stand, he seems to have no recollection of any such conversation, and being a witness for the appellees, his conversation with the administrator cannot be held as competent to establish the existence of such a contract, and

the case must therefore be determined upon the pleadings filed and the testimony of Buffington.   Ordinarily, the existence of a written contract, alleged to have been lost, or not in the custody of the party attempting to enforce it, and when not in his power to produce it, must be established by the attesting witnesses, if any, or, if not, by those who saw the contract, and were either present when it was entered into, or recognized the handwriting of the parties to it after it had been executed and delivered; but in this case no attesting witness proves the execution of the contract, and no one ever saw a contract that he knew to be genuine by reason of its having the true signatures of the husband and wife annexed, and the court is left to presume the existence of such a writing and its genuineness from the answer of the appellant and the testimony of Buffington. The appellant, in her answer, admits the existence of a writing signed by herself and husband after their marriage, by which he gave to her certain property at his death, and that the signature to that writing was in her maiden name, *Mary Moberly.* This writing, she says, was destroyed or surrendered to the husband, and in response to the rule, denies having it in custody after his death.   If, in passing upon this admission in the answer, the appellant is to have the benefit of the portion of it favorable to her side of the case, so as to destroy the effect of that part of it prejudicial to her rights, we are left to dispose of the case as if she had simply denied that any such marriage contract was ever entered into or executed by herself and husband, as alleged, or that any contract whatever was made between them with reference to his property prior to the marriage.   Buffington, a disinterested witness, and whose testimony is uncontradicted, makes a plain and candid statement of the manner

in which he obtained a knowledge of the existence of such a writing.

It was handed him by the appellant after the death of her husband. He read it doubtless at her instance, as it could have been given him for no other purpose, and from his testimony, there can be no doubt but that such a contract existed, and was in possession of the appellant after Simmons had administered upon her husband's estate.

The only trouble in this case arises with reference to the terms of the contract, the witness for the appellee stating the consideration to be that the appellant was to marry the intestate, and remain his wife. He does not remember the words or language used, but only the substance of the contract, and the chancellor below was left in uncertainty as to its execution or its contents, when the production by the appellant of the writing would have removed all difficulty, and enabled the chancellor to distribute advisedly the estate between the widow and the heirs. The secondary evidence in a case like this must be held to apply not only to the contents of the paper, but as to its execution. A writing has been traced to the custody of a party interested in suppressing it. It purports to have been an antenuptial contract, settling in some manner the rights of the widow, with her maiden name signed to the paper, and that of her intended husband.

She had it in her possession after her husband's death, and declined to produce it, not upon the ground that it had been lost or mislaid, but for the reason, as she maintains, that no such contract was in her custody either before or since the death of her husband.

The fact that she did have possession of the writing being satisfactorily established, the rule then is: "If the secondary

evidence so offered is vague and indistinct, this, it must be remembered, is to be imputed not to negligence on the part of the party offering it, but to the refusal of the party holding the superior evidence to produce such evidence." (1st Wharton on Evidence, page 153.)

The absence of the primary evidence, the contract itself, in this case, creates the presumption that, if produced by the appellant, it would sustain the appellees' statement as to its contents. The production of the writing would enable the witness Jones to state whether he had or not attested it, as it is evident, from his examination in chief, that he has no distinct recollection on the subject. The production of a writing is often necessary to refresh the memory of the witness, and if his name appears upon it, he is enabled to speak by reason of his signature, although he may have no recollection of its contents, or of even attesting it, except from the fact of his genuine signature being upon it. That some provision was made for the appellant by a contract entered into between herself and husband, in the event of the latter's death, is apparent from this record. The appellant admits, in effect, that such was the case, but relies on the fact that it was executed during the coverture, but withholds the paper that must, when produced, settle the rights of all these parties.

Here the parties are entitled to the production of the instrument, if in the power of the appellant to produce it; and in ordinary business transactions, where the adverse party has it in his power to produce evidence that would settle the question at issue, although not compelled to produce it, every intendment and presumption is to be made against the party who might remove all doubt on the question. (Com. v. Bell, 34 New Hampshire.) When a party

is charged with fraud or misconduct, and the production of papers would establish his guilt or innocence, the jury will be amply justified in inferring guilt from the unexplained fact of their non-production. (24 Beav., 679.)

Greenleaf says: his conduct is attributed to his supposed knowledge that the truth would have operated against him, and where papers are suppressed involving a question of title, this is evidence that the documents withheld afford inferences unfavorable to the title of that party. (1 Greenleaf, 37.)

Being satisfied that it was in the power of the appellant to have enlightened the chancellor by producing the paper that appellees were entitled to inspect, we see no reason for disturbing the judgment below.

Judgment affirmed.