Raymond v. Cox.

Henry E. Raymond and Benjamin Ayer

*v.*

Peter F. Cox and John A. Cox et al.

1. Where a defendant is accused of a fraud involving a serious crime, and
has, by the act of his adversary, even if it appears that such act was done
innocently, been deprived of the opportunity of having recourse, in making
his defence, to written evidence, which might have shown that the accusation
made against him was groundless, nothing short of the most complete and
convincing proof should induce the court to declare that the fraud charged is
proved.

2. To justify a decree in favor of the complainant in such a case, the proof
should be so complete and convincing as to produce a clear and decided con-
viction of the defendant's guilt, even assuming that the destroyed evidence
would have made a *prima facie* case in favor of his innocence.

On final hearing on bill and answer and proofs taken in open
court.

*Mr. Theodore Ryerson* and *Mr. Gilbert Collins*, for com-
plainant.

*Mr. Wm. M. Dougherty*, for Peter F. and John A. Cox

*Mr. James B. Vredenburgh,* for Terence Cox.

VAN FLEET, V. C.

The complainants are judgment creditors of Owen T. W. McDonald. They have exhausted their remedy at law, and now seek the aid of this court to reach certain property, which they charge represents money that two of McDonald's clerks embezzled from him while they were in his employ. For several years prior to 1883, McDonald was engaged in business, in Jersey City, as a wholesale and retail grocer. He failed in 1883. At the time of his failure, he represented to his creditors that his available assets amounted to about $14,000, and that his liabilities were over $50,000. He also stated that, in addition to his other assets, there was due to him on book account about $26,000, $4,000 of which was doubtful, and the balance ($22,000) desperate. The defendants, Peter F. Cox and John A. Cox, are brothers, and sons of the defendants, Terence and Ellen Cox. They were both in the employ of McDonald for four or five years prior to that event. Peter occupied the position of bookkeeper and cashier in the retail department. They were both

NOTE.—The following cases on the maxim, *In odium spoliatoris etc.*, are *additional* to those cited by Mr. Lawson (*Presump. Evid. § VII*), whose analysis has been substantially adopted:

I. The omission of a party to produce evidence in explanation of, or to contradict adverse testimony, raises a presumption against his claims, *2 Whart. Ev. §§ 1264–1268; Whart. Crim. Ev. (9th ed.) §§ 741–749; 1 Greenl. on Ev. (14th ed.) § 37:* as to the price received by an agent from sales made by him, *Christy* v. *Douglas, Wright (Ohio) 488;* see *Beck* v. *Martin, 2 McMull. 269; Arrott* v. *Brown, 6 Whart. 9, 6 W. & S. 422;* as to the assets received by an administrator who has not accounted, *Darland* v. *Porter, 9 Mo. 356, 357;* or by an executor, *Bass* v. *Chambliss, 9 La. Ann. 376, 394; Lewis* v. *Bacon, 3 Hen. & Munf. 98;* as to a specific performance impossible without defendant's action, *Hook* v. *Ross, 1 Hen. & Munf. 310, 317, 4 Munf. 97;* as to the amount borrowed on a pledge, *New Orleans Draining Co.* v. *De Lizardi, 2 La. Ann. 281, 283;* as to the amount realized at an administrator's sale, *Morton's Estate, 7 Phila. 484, 489;* as to the insolvency of trustees, who have squandered the funds, *Potter* v. *Hoppin, 10 Phila. 396, 400;* as to a bill for goods sold, *Bindley* v. *Martin, 28 W. Va. 773;* as to one deed in a chain of title, *James* v. *Biou, 2 Sim. & Stu. 600; Livingston* v. *Newkirk, 3 Johns. Ch. 312, 316;* as to a recorded deed found in the grantor's possession afterwards, *Mitchell* v. *Ryan, 3 Ohio St.*

Raymond v. Cox.

minors when they entered the service of McDonald, and John was still a minor when this suit was brought. The wages paid to each were small, commencing at $2.50 or $3 a week, and being gradually increased, as their period of service extended, until Peter received $8 a week and John $6. Between December 15th, 1879, and November 1st, 1882, Peter deposited in the Provident Institution for Savings of Jersey City, to the joint credit of John and himself, nearly $1,700, and between April, 1882, and December of the same year, he deposited to his own credit, in the Fifth Ward Savings Bank, of Jersey City, $700, making a total of nearly $2,400. In October, 1881, Peter purchased a lot of land in Jersey City for $1,890. He procured the title to be made to his father, Terence Cox. $1,090 were paid on the delivery of the deed, $822 of which were drawn from the deposit standing to the credit of Peter and John in the Provident Institution for Savings. The other $268 were paid with money on hand, and which, so far as appears, the defendants had never had in bank. The payment of the other $800 of the purchase-money was secured by a mortgage on the property conveyed, payable January 1st, 1884. This mortgage was

*384;* as to a document alleged to be a forgery, *Sharon* v. *Hill, 26 Fed. Rep. 337; Winchell* v. *Edwards, 57 Ill. 41, 49;* or mutilated, *Bell* v. *Chicago R. R. Co., 64 Iowa 321;* as to a marriage settlement under which the party claims, *Benjamin* v. *Ellinger, 80 Ky. 472; Wells* v. *Bransford, 28 Ala. 200, 213;* as to partnership books or accounts withheld by one partner from another, *Miller* v. *Craig, 6 Beav. 433; Walmsley* v. *Walmsley, 3 Jon. & La Touche 556; Laswell* v. *Robbins, 39 Ill. 209; Bevans* v. *Sullivan, 4 Gill 383; Brown* v. *Haynes, 6 Jones Eq. 49; Robertson* v. *Gibb, 38 Mich. 165; Pearce* v. *Pearce, 77 Ill. 284; Wallace* v. *Berger, 14 Iowa 183; Wiswall* v. *Ayres, 51 Mich. 324; Heath* v. *Waters, 40 Mich. 457; Ruppe* v. *Steinbach, 48 Mich. 465; Van Ness* v. *Van Ness, 5 Stew. Eq. 669; Dimond* v. *Henderson, 47 Wis 172, 175;* see, however, *Knapp* v. *Edwards, 57 Wis. 191; Evans* v. *Montgomery, 50 Iowa 325; Hall* v. *Clagett, 48 Md. 223; Harvey* v. *Varney, 104 Mass. 436; Mooe* v. *Story, 8 Dana 226; Davidson* v. *Wilson, 3 Del Ch. 307; Campbell* v. *Hastings, 29 Ark. 512, 534;* as to a party's cheque-book, *Crescent Ice Co.* v. *Ermann, 36 La. Ann 841;* as to letters, admitted to have been received, *Topham* v. *McGregor, 1 C. & K. 320; Law* v. *Woodruff, 48 Ill. 399; Mason* v. *Libbey, 64 How. Pr. 259, 90 N. Y. 683; Fowler* v. *Martin, 1 T. & C. (N. Y.) 377, 56 N. Y. 676;* as to a court record partly withheld, *Towne* v. *Milner, 31 Kas: 207; Welsh* v. *Childs, 17 Ohio St. 319;* as to an assignment for the benefit of creditors, *Hunt* v. *Collins,*

27

paid in April, 1882, by withdrawing a further sum of $434.60 from the Provident Institution for Savings and $365.40 in cash. When this suit was brought, there still remained on deposit in the Provident Institution for Savings $417.32, and in the Fifth Ward Savings Bank $630. The object of this suit is to procure a decree, declaring that the moneys in bank, as well as those used to pay for the land, represent moneys embezzled from McDonald by Peter and John, or one of them, and directing that the land be sold, and that the proceeds of sale, together with the money in bank, be applied in payment of the complainants' judgment.

The complainants, to entitle themselves to the decree they ask, are bound to prove that Peter and John Cox, or one of them, fraudulently abstracted McDonald's money. They are not required to show the exact amount wrongfully taken, but to prevail they must establish the fact of embezzlement by one or both of the persons charged. That is the fundamental fact of the complainants' case, and unless they have proved it, they have no right to relief. There is, however, no such proof in the case. Even McDonald does not pretend that he knows that his money was wrongfully taken. He merely supposes, and his supposition

4 Iowa 56; as to the accounts of an assignee for the benefit of creditors, Page v. Stephens, 23 Mich. 357; as to a party's failure to call every material witness, Bleecker v. Johnston, 69 N. Y. 309; People v. Hovey, 29 Hun 382, 92 N. Y. 554; Brooks v. Steen, 6 Hun 516; Fowler v. Sergeant, 1 Grant's Cas. 355; Calhoun v. Burnett, 40 Miss. 599; Bent v. Lewis, 88 Mo. 462; as to one indicted omitting to avail himself of evidence within his reach, Doty v. State, 7 Blackf. 427; State v. Cousins, 58 Iowa 250; Williams v. Commonwealth, 37 Leg. Int. 85, 309; Lawson on Presump. 551; see Eason v. State, 6 Baxt. 431; State v. Eaton, 75 Mo. 586; Whart. on Crim. Ev. (9th ed.) §§ 448, 749.

II. Such omission does not relieve the opposite party from the burden of proving his case; that alleged trespassers owned no lands in the vicinity, Sorrel v. Carlin, 23 La. Ann. 528, 529; that an answer in chancery cannot establish the fraudulent abduction of a mortgage, Miller v. Wack, Sax. 204, 213; that a will, which revoked a former one, was improperly destroyed, Day v. Day, 2 Gr. Ch. 549, 557; construction of a statute providing that the contents of a destroyed will may be established "as near as may be," Banning v. Banning, 12 Ohio St. 437, 456; that partnership books had been altered by the defendant, Gage v. Palmer, 87 Ill. 329, 343; that the defendant is sued as an administrator, Chandler v. Meckling, 22 Tex. 36.

III. The alteration, suppression, falsification, destruction or manufacturing

Raymond v. Cox.

seems to be a mere idle fancy. When asked by the complain-
ants' counsel this question : " How do you arrive at the fact that
your money was taken—I do not mean any particular amount—
but how can you prove to the court that your money was taken—
how do you know it yourself?" he answered : " I do not know
it myself, except that I suppose he (Peter) turned to, and took
this money out of my business in my absence." Counsel then
said : " That is your supposition, but what have you got to show
that your money was taken—how can you show that any of
your money was taken ?" to which he replied : " From the fact
that in prior years I always made large sums of money in that
business, and for the last two years I did not; I lost money."
It will be observed that this amounts to absolutely nothing at
all as proof of embezzlement, and yet it is substantially all
there is.

The paucity of the proofs in this respect, or rather the total
want of proof, considered in connection with the fact that, at the
time when McDonald first discovered that Peter and John Cox
were in the possession of a large sum of money, he had in his
possession the means by which it could be determined, with

of evidence raises a presumption against the spoliator, where the evidence is
relevant, or it was his duty to preserve it: as to the amount of damage done
by a wrong-doer, *Duke of Leeds* v. *Earl of Amherst*, *20 Beav. 239 ; Pettigrew* v.
*Barnum, 11 Md. 434, 444; Searles* v. *Cronk, 38 How. Pr. 320, 325 ; Johnson* v.
*Stone, 11 Humph. 419, 421; Christian* v. *United States, 7 Ct. of Cl. 431, 435 ;
Barrow* v. *Rhinelander, 3 Johns. Ch. 614, 620, 17 Johns. 538 ;* as to a thief's
alteration of the number on a negotiable bond, *Force* v. *Elizabeth, 1 Stew. Eq.
403, 2 Stew. Eq. 587 ;* see *Suffell* v. *Bank of England, L. R. (9 Q. B. D.) 555 ;*
as to the value of labor put on timber cut by trespassers, *Railway Co.* v.
*Hutchins, 32 Ohio St. 571, 576 ;* as to the statute of limitations in a suit on
notes fraudulently taken by the defendant from plaintiff's testator, *Bricker* v.
*Lightner, 40 Pa. St. 199, 204;* as to the payor of a note, after it was due,
snatching it from his sister, who was the payee, and burning it up, *Outhouse* v.
*Outhouse, 13 Hun 130, 132 ;* as to a marriage settlement destroyed by the wife
after her husband's death, *Holt* v. *Wilson, 75 Ala. 58, 67 ;* as to undue influ-
ence over a testator, *Dean* v. *Negley, 41 Pa St. 312, 317 ;* as to a defendant's
destruction of notes alleged to have been forged by him, *State* v. *Chamberlain,
89 Mo. 129 ;* as to a note designedly altered by the payee, *York* v. *James, 14
Vr. 332 ;* see *Lewis* v. *Schenck, 3 C. E. Gr. 459 ; Bigelow on Fraud 255 et seq. ;
Newell* v. *Mayberry, 3 Leigh 250 ;* as to the accounts of trustees, *Elmer* v.

entire certainty, whether they had been guilty of wrong-doing or
not, and that it appears that he not only made no use of such
means, but soon thereafter disposed of them in such manner as to
prevent their use either as proof of guilt or innocence, goes far to
induce a conviction that his discovery did not arouse his sus-
picions, or if he had suspicions they were not strong enough to
provoke him to make an investigation to see whether they were
well founded or not. The method by which McDonald trans-
acted his business made it quite impossible for his employees to
embezzle his money without being detected, unless two or more
of them acted in concert. His clerks or salesmen were not
allowed to receive payment for the goods they sold. He con-
ducted his business in this wise: a clerk, on making a sale, put
down on a slip of paper first the number of the sale, that is,
whether it was the first, second or third sale made by him
that day, and then the amount of the sale, adding his name or
initials, and this slip was handed to the purchaser, who took it
to the cashier and paid him the amount of his purchase. The
cashier placed the slip on a file, and entered on his book the
amount paid, the number of the sale, and by whom it was made.

*Loper*, 10 C. E. Gr. 475, 482 ; *Gaston's Trust, 8 Stew. Eq. 60* ; as to a trades-
man's books of account, *James* v. *Harvey*, *Coxe 228* ; *Jones* v. *DeKay, Pen.
(N. J.) 955* ; *Cook* v. *Brister, 4 Harr. 75* ; *Churchman* v. *Smith, 6 Whart. 146* ;
*Hoyt* v. *McLaughlin, 52 Wis. 280, 288* ; *Burr* v. *American Co., 17 Hun 188,
81 N. Y. 175* ; as to a deed altered by the grantor after delivery, *Wallace* v.
*Harmstad, 15 Pa. St. 462, 44 Pa. St. 492, 496* ; or by his agent, *Arrison* v.
*Harmstead, 2 Pa. St. 191* ; as to the violation of a statute prohibiting traffic
with slaves, *State* v. *Chandler, 2 Strobh. 266, 269* ; as to the president of a rail-
road company refusing the trustee for its bondholders access to its books,
*Pullan* v. *Cincinnati R. R. Co., 4 Biss. 35, 48* ; as to such company's agent
offering the adversary's witness money not to testify, *Chicago R. R. Co.* v.
*McMahon, 103 Ill. 485* ; see *Green* v. *Woodbury, 48 Vt. 5* ; *Batdorff* v. *Bank of
Reading, 61 Pa. St. 179.*

IV. The presumption in disfavor of a spoliator does not arise where the
document is otherwise proved in the case, or the spoliation is open and for
cause: that plaintiff destroyed a request, written in lead pencil by defendant,
for a loan of money, *Rudolph* v. *Lane, 57 Ind. 115* ; that a note given for part
of the consideration of a deed was destroyed by the maker after payment, in a
suit afterwards brought by the grantor's creditor to set aside the deed for fraud,
*Pollock* v. *Wilcox, 68 N. C. 46* ; to prevent exposure to the public of the busi-

At the close of the day's business, the cashier calculated the total amount of each clerk's sales, appearing on his book, and then added the totals together, thus ascertaining the total of the sales for that day appearing on his books.   Each clerk, in addition to making the slip, was required to enter on a book, which he kept, the number and amount of each sale made by him, and when the day's business closed, to add up the total of his sales appearing on his book, and hand the cashier a slip showing the amount as he calculated it.   The totals furnished by the clerks were added together by the cashier, and if the amount thus ascertained agreed with the total appearing on the cashier's book, the amount was put on a paper, and the paper put in the money drawer, to show McDonald, when he came to count the money, the amount that should be there.

It will be seen at a glance, that it would be scarcely possible to devise a system, for conducting such a business, which, if properly observed, would be more efficient, both in preventing embezzlement, and also in detecting it, speedily and surely, if it were committed.   In the absence of collusion between the cashier and one or more the salesmen, the books kept by the salesmen

ness transactions of a firm, *Gage* v. *Parmelee*, *87 Ill. 329, 342;* that there are obvious alterations in a county treasurer's books, *Van Ness* v. *Hadsell*, *54 Mich. 560;* that a receipt was altered by a stranger, *Goodfellow* v. *Inslee, 1 Beas. 355;* that merely tearing a deed is no proof of a design to cancel it, *Baldwin* v. *Campfield, 4 Hal. Ch. 902;* that a residuary legatee, who was also the executor, destroyed the will, because he was advised by counsel that it was inoperative, *Wyckoff* v. *Wyckoff, 1 C. E. Gr. 401;* that the donor and trustee of a fund destroyed the instrument of trust, and made another directly to the *cestui que trust, Work's Appeal, 59 Pa. St. 444, 449;* see *Blake* v. *Fash, 44 Ill. 302;* that a deed was destroyed by one named therein as a grantor, but who never executed it, raises no presumption against the grantors who did execute it, *Blake* v. *Blake, 56 Wis. 392, 397;* that a contract to convey lands was clandestinely obtained by the contractor, and destroyed, *DeCamp* v. *Crane, 4 C. E. Gr. 166;* or not produced, *Lee* v. *Lee, 9 Pa. St. 169, 174;* that part of the maker's name had been torn from a note by a child, and afterwards pasted on by the payee, *Frazer* v. *Boss, 66 Ind. 1.*

V.. The voluntary destruction of a document raises *prima facie* a presumption of fraud, and precludes the spoliator from giving secondary evidence of its contents, in the absence of a legal excuse for its destruction : that the payee of a note destroying it, prevents his recovering the debt it represented, *Vanau-*

Raymond *v.* Cox.

would show, with entire certainty, just how much money the cashier had received each day. And the book kept by McDonald, as also that kept by the cashier, showed just how much money the cashier accounted for each day. It is not pretended that there was collusion between any of McDonald's employees, except between the cashier and his brother John. No suspicion has been uttered against any other person. John was examined as a witness. Peter did not appear at the hearing. John testified fully and frankly. His demeanor, while under examination, was that of an honest witness, and I am convinced that his evidence, in the main, is truthful. He denied that he ever wrongfully took a penny of McDonald's money. His testimony satisfies me that if moneys were fraudulently abstracted from McDonald, John neither did it, nor knew of it. If moneys were embezzled, and Peter did it, it must, in the present condition of the proofs, be believed that he did it alone. There is no evidence which will justify even a faint suspicion against anybody else. Now, when McDonald first discovered the facts which led to the institution of this suit, all the books, or nearly all of them, which had been kept by the salesmen, and by Peter and by McDonald, and which, it is manifest, would have furnished very decisive, if not conclusive, evidence either of Peter's guilt or innocence, were still in McDonald's possession. If innocent, the books were Peter's shield, and their destruction has made it possible for the complainants to make an accusation

ken v. *Hornbeck, 2 Gr. 178 ; Plyler* v. *Elliott, 19 S. C. 263 ; Randolph on Com. Paper § 1763 ;* see *Lewis* v. *Schenck, 3 C. E. Gr. 459 ; Hunt* v. *Gray, 6 Vr. 227 ;* that a note given by a guardian to his ward's mother was found after his death with his name torn off, *McGill* v. *O'Connell, 6 Stew. Eq. 256 ;* that one interested in a will destroyed it, *Barker* v. *Ray, 2 Russ. 63, 73 ;* see *Smith* v. *Spencer, 1 Y. & C. C. C. 75 ;* that equity will not relieve the payee of a note, who, *ignorantly,* cut off the subscribing witness's name, and had been defeated at law on that ground, *Sharpe* v. *Bagwell, 1 Dev. Eq. 114, 116 ;* see *Landis* v. *Keller, 34 Leg. Int. 186 ; Fisher* v. *Mershon, 3 Bibb 527 ;* that a trustee cannot divest the estate by cutting his name out of the trust deed, *Morgan* v. *Elam, 4 Yerg 374, 426 ;* that a sheriff, at the plaintiff's request, suppressed the return to a *ca. sa., Windrum* v. *Parker, 2 Leigh 361, 369 ;* that a landlord obtained possession of a lease from the depositary, destroyed it, and rented the premises to another tenant, *Avan* v. *Frey, 69 Ind. 91.*—Rep.

Raymond *v.* Cox.

against him, which, with the books still in existence, they would never have allowed to be made. So vitally important are the entries in these books, to a safe and just determination of the truth of the charges made against the defendants, that it is impossible for me to imagine a condition of proofs, which would justify the court, in the absence of the books (such absence not being the result of the fault or wrong of the defendants), in pronouncing a judgment which would, in substance, declare that Peter was guilty of embezzlement. If the books show that Peter is innocent, I think it would be almost impossible to show by other evidence that he is guilty.

Notwithstanding the great importance of these books as evidence, McDonald admits that he sold them, after his failure, as waste paper. His act resulted in the destruction of evidence, which, it is clear, would have shown, with almost absolute certainty, whether the charge now made against Peter is true or false. It would, perhaps, be too much to say that McDonald sold the books with the deliberate purpose of depriving Peter of evidence, which he knew would show that Peter had done no wrong, but if we say his act was simply careless, and not wrongful, still its consequences to Peter are precisely the same. It deprived Peter of the means of showing, by written evidence, made from day to day, not only by Peter himself, but by his fellow employees, and also by his accuser, that the charge now made against him is without the slightest foundation in fact. While it might not be proper in such case to declare that the case should be decided by the application of the maxim, *In odium spoliatoris omnia præsumuntur*, yet I think nothing can be more clearly right, as a rule of judicial action, than that, where a defendant is accused of fraud, involving a serious crime, and has, by the act of his adversary, even if the act appears to have been done innocently, been deprived of the opportunity of having recourse, in making his defence, to written evidence, which might have shown that the accusation made against him was groundless, nothing short of the most complete and convincing proof should induce the court to declare that the fraud charged is proved. To justify a decree in favor of the complainants in such

a case, the proof should, in my judgment, be so complete and convincing as to satisfy the court, that even if the destroyed evidence made a *prima facie* case of innocence, still, assuming that to be so, the proof in demonstration of guilt being so much greater and so much more convincing than that in favor of innocence, as to produce a clear and decided conviction of the defendants' guilt.

There is no such evidence in this case. The complainants rest their right to a decree on three facts. *First,* that McDonald's failure shows that he must have lost money; *second,* that Peter stated, while negotiating for the purchase of the land, which was subsequently conveyed to his father, that he did not want McDonald to know that he intended to buy; and *third,* that the attempt of the defendants to account for the money and property found in their possession, is so manifestly a fabrication, and so improbable, as at once to convince any discriminating mind, that a part of them, at least, was obtained by fraudulent means. If it be conceded that all these facts are satisfactorily proved, still it must be admitted, as it seems to me, that the fact constituting the very foundation of the complainants' right to relief remains unproved, namely, that the money and property, in the defendants' possession, represent moneys embezzled by Peter or John Cox, or both, from McDonald. The proofs utterly fail to show that McDonald ever lost a penny by embezzlement. McDonald does not pretend that he knows such to be the fact. He surmises that it may be so, but his conjecture in this regard rests entirely on the fact that he was unable to pay his debts. But how his inability to pay his debts was brought about—whether by selling his goods on credit to persons who could not be compelled to pay, or by engaging in a ruinous competition with his competitors in business, or by embarking in disastrous ventures, or by some other like cause—neither he, nor anybody else, from the evidence now before the court, can form anything like a trustworthy guess. Prior to his failure he was engaged in many different ventures, but he conducted them so negligently, and knew so little about them, that he frankly confesses that he does not know whether they resulted in a gain or

a loss. From the evidence before the court, I think it is extremely doubtful, whether, at any time during the last three or four years McDonald was engaged in business, he knew enough about his business to be be able to form a correct judgment as to his pecuniary condition.

The fatal defect of the complainants' case is, that there is no proof of embezzlement by either of the persons charged. They may have money, for the possession of which they have not satisfactorily accounted, and this condition of the proofs may justify a belief that they obtained it by fraudulent means, but this does not go far enough to show that the complainants are entitled to a decree. They must go further, and show that the money was obtained of McDonald. There is no such proof. A wrong may have been committed, but until it is shown that it was committed against McDonald, neither he, nor those standing in his right, can successfully ask for redress.

The complainants' proofs fail in a vital point, and for that reason their bill must be dismissed, with costs.